C. Buifford QUALLE, Beltrami County
Court Administrator, petitioner,
Respondent,

v.

COUNTY OF BELTRAMI,
Minnesota, Appellant.

No. C2–87–1769.

Court of Appeals of Minnesota.

March 8, 1988.

Douglas Cann, Bemidji, for respondent.

Peter D. Bergstrom, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Peter M. Ackerberg, Sp. Asst. Atty. Gen., St. Paul, for intervenor State of Minn.

Heard, considered and decided by HUSPENI, P.J., and SCHUMACHER and FLEMING, JJ.

## OPINION

FLEMING, Judge [*].

The questions presented in this case are (1) whether a county board can challenge the constitutionality of the statutory appeal procedure for the court administrator's salary determination without having raised the issue below; (2) whether the trial court erred in increasing the administrator's salary despite the board's decision to freeze the administrator's pay; and (3) whether the trial court violated the Minnesota comparable worth statute by increasing the administrator's pay under the authority of the appeal statute, Minn.Stat. § 485.018, subd. 7 (1986).

## FACTS

C. Buifford Qualle has been the Beltrami County Court Administrator, formerly known as clerk of court, since 1965. The Beltrami County Board conducted two job classification studies to establish salary ranges for different classes of county employees, in 1978 and in 1983. In the first study the court administrator was rated 8th of county department heads. The 1983 study employed a questionnaire prepared by the county personnel director and completed by each employee, and interviews with the employees. The 1983 plan was never accepted by the board.

In 1984, the legislature enacted the Minnesota Pay Equity Act (MPEA), Minn. Stat. § 471.991–999 (1986). The same year, the county hired a consultant, the law firm of Steffen, Munstenteiger, Beens, Parta & Peterson, with Bernard Steffen overseeing the project. Steffen appointed Robert O'Connor of the firm to administer the project. The plan was altered to insure compliance with the comparable worth legislation.

The O'Connor plan used the 1983 questionnaire. In 1985, county department heads, including Qualle, reviewed their 1983 questionnaires. Using the information in the questionnaires, each department head was assigned a rating for each of the following factors: (1) "know how," (2) experience, (3) contacts with others, (4) independence of action/complexity of duties, (5) effect of error, (6) type of supervision, (7) scope of supervision, (8) effort, and (9) working conditions. Each factor was assigned a particular weight and rated by a letter grade. The higher the letter grade the less significant the factor was. Information gained from the questionnaires was not supplemented by any other interviews or on-the-job observation.

The plan assigned grade level 20 to the court administrator position, for which the pay range was $2,046–2,557 per month. Qualle's salary was above that so it was frozen at its 1985 level of $2,601, making his salary 13th among department heads.

After several meetings, the board adopted O'Connor's ratings on December 17, 1985. The board did not seek any additional information from Qualle or his supervisors before adopting its ratings. At the trial, Qualle testified that although the consultants did not talk to him, he called O'Connor and argued with him about Qualle's preliminary ranking. Qualle testified that he believed his ranking on "effect of errors" was raised from "C" to "D" as a result of the conversation.

After the board made its decision, Qualle appealed to the district court pursuant to Minn.Stat. § 480.018, subd. 7. After a trial de novo, the court found the board's decision to be arbitrary and capricious and made without sufficient consideration of Qualle's actual abilities and performance, as required by statute. Qualle's 1986 salary was increased to $2950 per month. The court also ordered the board to alter the county's job evaluation plan by raising the comparable worth factor ratings of the court administrator for "know how" and "contact with others" raised by one letter grade; ordered the court administrator's position upgraded to salary level 22; and

[*] Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

ordered reasonable attorney fees for Qualle.

Beltrami County appeals, contending that (1) the statutory authority of the court to review the board's salary determination is an unconstitutional violation of the doctrine of separation of powers; (2) the statutory appeal procedure may not be used to challenge the administrator's comparable worth rating under Minn.Stat. § 471.9975 (1986); and (3) the decision of the trial court was clearly erroneous, unsupported by the record and contrary to established legal precedent.

## ISSUES

1. Did appellant Beltrami County waive the issue of constitutionality of the statutory appeal procedure by failing to raise it before the trial court?

2. Did the trial court err in finding the county's salary determination arbitrary and capricious, and in raising the administrator's salary?

3. Did the trial court violate the Minnesota Pay Equity Act by increasing Qualle's salary?

## ANALYSIS

1. Appellant asks this court to declare Minn.Stat. § 485.018, subd. 7 (1986) unconstitutional because it allows the district court to exercise a legislative power by reviewing the county's salary determination. The constitutional issue was not raised before the trial court, and the attorney general did not receive notice of the constitutional challenge until October 1987, several months after the trial court judgment in July. Furthermore, appellant did not raise the constitutional issue in its statement of the case.

■ When a constitutional challenge is not raised and acted upon in the court below, a party will not be heard on the issue on appeal. *Hampton v. Hampton,* 303 Minn. 500, 501, 229 N.W.2d 139, 140 (1975). An exception can be made to this general rule

> when the interests of justice require consideration of such issues, when the parties have had adequate time to brief such issues, and when such issues are implied in the lower court.

*Tischendorf v. Tischendorf,* 321 N.W.2d 405, 410 (Minn.1982), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983).

■ Appellant does not meet these conditions. Appellant has not raised the issue in a timely manner. In addition, the attorney general should have been notified in writing prior to conclusion of the trial in order to allow the opportunity for the state to defend the statute's constitutionality. Minn.R.Civ.P. 24.04; *Elwell v. County of Hennepin,* 301 Minn. 63, 70–71, 221 N.W.2d 538, 544 (1974).

2. Because the trial court determined the administrator's salary in a de novo trial, and thereby acted as a court of first impression, this court on appeal should apply a clearly erroneous standard. *Amdahl v. County of Fillmore,* 258 N.W.2d 869, 874 (Minn.1977).

■ Minn.Stat. § 485.018, subd. 7 authorizes the trial court to redetermine the administrator's salary and remand to the board if the court finds

> the board acted in an arbitrary, capricious, oppressive or unreasonable manner or without sufficiently taking into account the responsibilities and duties of the office of the court administrator, and the court administrator's experience, qualifications, and performance * * *.

The trial court concluded as a matter of law that the board failed in all three respects.

The most significant flaw in the board's salary determination was that it evaluated the position, not the "people or performance." The point scale that O'Connor used did not account sufficiently for Qualle's specific attributes, his more than 20 years of experience, qualifications, and performance. Rather, the point scale measured the requirements of the position.

The trial court also found that O'Connor's evaluation was incomplete, arbitrary, and unreliable because it employed a questionnaire which the consultant had not personally designed; the reliability of the in-

formation thus obtained second-hand was not tested by interviews, on-the-job observation, or collection of job diaries; and the questionnaires were audited only by O'Connor, an associate, and not reviewed by the project supervisor, Bernard Steffen. The court was also concerned that the board did not personally consult Qualle or his supervisors, judges of the district.

We find the trial court's reasoning persuasive. It was not clearly erroneous for the trial court to conclude that the board decision was arbitrary and capricious and failed to consider the statutory factors in determining the court administrator's salary.

■ 3. Appellant also contends that when it increased Qualle's salary, the trial court violated comparable worth requirements by changing one employee's salary without adjusting other comparable employees' pay. *See* Minn.Stat. §§ 471.-991–.999 (MPEA). At the trial court level Qualle alleged that the county violated Minn.Stat. § 485.018, subd. 7. The trial court based its decision that Qualle's salary was incorrectly determined on these statutory standards. It does not appear that Qualle ever challenged his salary on the grounds it was inequitable under comparable worth principles.

Furthermore, the court administrator's appeal rights under § 485.018, subd. 7 were specifically reaffirmed and expanded by the legislature one year after the enactment of the MPEA. In 1985 the legislature amended subdivision 7 to include among the factors the county must consider the court administrator's "experience, qualifications, and performance." 1985 Minn. Laws, ch. 281, § 12. Statutes are presumed to have been passed with deliberation and with full knowledge of all existing statutes on the same subject. *County of Hennepin v. County of Houston*, 229 Minn. 418, 421–22, 39 N.W.2d 858, 860 (1950).

For these reasons, we conclude the trial court's decision was not contrary to the Minnesota Pay Equity Act.

## DECISION

The trial court's decision is in all respects affirmed.

Affirmed.