No. 89-186

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

DAVID ALARIC PALMER, a protected
person by MARTHA ROSE DIACON,
his conservator,

        Plaintiff and Respondent,

  -vs-

MONTANA INSURANCE GUARANTY ASSOCIATION,

        Defendant and Appellant.

---

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Sidney R. Thomas and Ramona R. Heupel; Moulton Law
Firm, Billings, Montana

    For Respondent:

        Dennis Patrick Connor, Great Falls, Montana
John C. Risjord, Overland Park, Kansas

---

Submitted on Briefs:  Aug. 10, 1989

Decided:   September 5, 1989

Filed:

_____
        Clerk

Justice L. C. Gulbrandson delivered the Opinion of the Court.

This case involves the interpretation of an offset provision of the Montana Insurance Guaranty Association Act. The Montana Insurance Guaranty Association appeals from entry of judgment by the Eighth Judicial District Court, Cascade County, Montana, in favor of respondent, David Palmer. This action, filed on behalf of Palmer, a protected person, sought declaratory relief to have determined whether the Montana Insurance Guaranty Association (MIGA) is obligated to pay Palmer its statutory limit of $300,000. The District Court concluded MIGA was obligated to pay Palmer its statutory limit. We reverse.

The facts underlying this action are more fully set forth in Palmer by Diacon v. Farmers Ins. Exchange (Mont. 1988), 761 P.2d 401, 45 St.Rep. 1694, but the essential facts are these. Palmer suffered severe head injuries in a motorcycle accident in 1984. He sought recovery for his damages, stipulated to exceed $1,000,000, from both his uninsured motorist carrier and Abaddon Products Company, Inc., the manufacturer of the motorcycle helmet he was wearing at the time of the accident.

Abaddon, an Idaho corporation, carried $1,000,000 in insurance coverage through its primary insurance carrier, Ideal Mutual Insurance Company. Ideal became insolvent, which triggered coverage of MIGA. Because Abaddon is an Idaho corporation, Palmer was required to make his claim first against the Idaho Insurance Guaranty Fund, as mandated by § 33-10-115(2), MCA, which provides:

> Any person having a claim which may be recovered under more than one insurance guaranty association or its equivalent shall seek recovery first from

2

> the association of the place of residence
> of the insured . . .

Palmer filed this declaratory judgment action to have determined whether the coverage limits of MIGA could be stacked with the amounts received from the Idaho Insurance Guaranty Fund. MIGA argues that § 33-10-115(2), MCA, requires an offset of the Idaho Fund contribution against its statutory maximum. The offset provision of § 33-10-115(2), MCA, provides:

> Any recovery under this part shall be reduced by the amount of recovery from any other insurance guaranty association or its equivalent.

The District Court concluded the Idaho payments were to be offset against the unpaid claim, rather than against MIGA's limits. In its Order granting summary judgment, the District Court concluded:

> [T]he sentence "[a]ny recovery under this part shall be reduced by the amount of recovery from any other insurance guaranty association or its equivalent" means simply that the total value of PALMER'S claim, that is the value of the total amount payable as damages for claimant's injuries caused by the covered occurrence, shall be reduced by the amount the claimant has recovered from the Idaho guaranty fund.

Judgment for $300,000 was entered in favor of Palmer on February 6, 1989 and this appeal followed. MIGA raises these issues for our review:

1. Was the Montana Insurance Guaranty Association entitled to offset amounts Palmer received from the Idaho Insurance Guaranty Fund against its statutory maximum?

3

2. Was the Montana Insurance Guaranty Association entitled to offset amounts Palmer received under his uninsured motorist policy?

Respondent has received the Idaho statutory maximum, $300,000, from the Idaho Insurance Guaranty Fund. The issue presented here is whether MIGA is obligated for the residual unpaid portion of Palmer's claim, which the parties have stipulated exceeds MIGA's statutory limit of $300,000. Respondent argues MIGA is obligated to pay the unsatisfied portion of the claim because Montana's statutes do not prohibit stacking of insurance guaranty association limits. Respondent supports his position by emphasizing the declared purpose of the guaranty association as stated in § 33-10-101(2), MCA:

> The purpose of this part is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.

Respondent argues the act is an assurance that the duties and obligations of the insolvent insurer will be satisfied. Therefore, to give effect to the act's purpose, respondent argues, the District Court was correct to conclude the payments paid by the Idaho Insurance Guaranty Fund are to be offset against the total claim, rather than against MIGA's statutory limit. We disagree.

The Montana Insurance Guaranty Association Act, § 33-10-101, MCA, et seq., was adopted in 1971 from the model act designed by the National Association of Insurance Commissioners. The Montana act provides for the creation of

4

the Montana Insurance Guaranty Association, a non-profit unincorporated legal entity consisting of insurers licensed to transact business in Montana. While the purpose of the act is to "avoid financial loss" to claimants and policyholders because of the insolvency of an insurer, the breadth of this announced goal is limited by the terms of the statute. Section 33-10-105, MCA, provides that the association shall:

> (a) be obligated to the extent of the covered claims . . . but such obligation shall include only that amount of each covered claim which is in excess of $100 and is less than $300,000. . . (Emphasis added.)

Recovery under this act, therefore, is limited to an amount which exceeds $100 but is less than $300,000. The scope of MIGA's coverage is additionally limited by the offset provisions of § 33-10-115, MCA:

> (1) Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this part shall be reduced by the amount of any recovery under such insurance policy.
>
> (2) Any person having a claim which may be recovered under more than one insurance guaranty association or its equivalent shall seek recovery first from the association of the place of residence of the insured . . . Any recovery under this part shall be reduced by the amount of recovery from any other insurance guaranty association or its equivalent. (Emphasis added.)

5

MIGA's statutory obligations are not as broad as Palmer suggests. The act's purpose language, while very broad, cannot be given the "effect" as Palmer construes it, in light of the unambiguous language which defines and limits MIGA's obligations.

The framers' comments to this offset provision of the Model Act support our conclusion that payments from another association are offset against the $300,000 limit of MIGA's obligation:

> This subsection does not prohibit recovery from more than one Association, but it does describe the Association to be approached first and then requires that any previous recoveries from like Associations must be set off against recoveries from this Association. (Emphasis added.)

It is the duty of this Court to give effect to the purpose of a statute. LaFountaine v. State Farm Mut. Auto. Ins. Co. (1985), 215 Mont. 402, 698 P.2d 410. However, if the intent of the legislature can be determined from the plain meaning of statutory words, we will go no further or apply any other means of interpretation. Phelps v. Hillhaven Corp. (Mont. 1988), 752 P.2d 737, 45 St.Rep. 582. We conclude that this language of the statute is clear and unambiguous.

The conclusion reached here is not contrary to the permitted stacking provisions of the statute. Since recovery from other States' insurance guaranty funds may not reach MIGA's statutory limit of $300,000, any difference is recoverable under Montana's Act, up to the $300,000 limit.

The Montana Insurance Guaranty Association was not adopted as a form of reinsurance for every insurer who becomes insolvent. Rather, it is clear the Association was established to soften resulting hardship which may be

encountered, under limited circumstances, by a policy holder or claimant when an insurer become insolvent.

Because we have concluded MIGA is entitled to offset the $300,000 paid by the Idaho Fund, we need not address Palmer's second issue relating to an offset of his uninsured motorist coverage.

Reversed and remanded for entry of judgment in accordance with this opinion.

_____
                                        Justice

We concur:

_____
            Chief Justice

_____

_____

_____
            Justices


        Justice John C. Sheehy did not participate in this Opinion.

Justice William E. Hunt, Sr., dissenting.

I dissent. The purpose of the offset provisions provided in § 33-10-115, MCA, is to offset amounts received from solvent insurers and other state guaranty associations against the value of a covered claim, thereby preventing a claimant from recovering more than the total value of the claim. The purpose of the provisions is not to offset amounts received from solvent insurers and other state guaranty funds against the Montana Insurance Guaranty Association's $300,000 liability limit.

The Montana Insurance Guaranty Association Act is to be liberally construed to prevent a claimant's financial loss because of a failed insurer. The act is not to be read restrictively to protect MIGA at the expense of injured claimants. The guaranty association is already protected by the $300,000 liability limit written into the statute.

I would affirm the District Court.

Justice