Stanley R. SIFERS, Plaintiff,

v.

GENERAL MARINE CATERING COMPANY, Defendant–Third Party Plaintiff–Appellant,

v.

FIRST STATE INSURANCE CO. and Louisiana Insurance Guaranty Association, Third Party Defendants–Appellees.

Nos. 86–3494, 86–3685, 86–3760, 87–3164, 87–3606, 87–4387, 87–4798, 88–3308, 89–3453, 89–4046 and 89–4671.

United States Court of Appeals, Fifth Circuit.

March 23, 1990.

Thomas G. O'Brien, Edwin C. Laizer, Adams & Reese, New Orleans, La., for S.H.R.M. Catering in No. 87–4798.

Alex D. Chapman, Jr., J. Wendel Fusilier, Ville Platte, La., for amicus curiae Joseph Mike Deshotels.

André J. Mouledoux, Alan G. Brackett, Hebert, Mouledoux & Bland, New Orleans, La., for Stacy L. Duplantis.

Paul J. Galuszka, Gregory Bulluing, New Orleans, La., for Galuszka.

## ON PETITIONS FOR REHEARING

Before GEE, RUBIN, and SMITH, Circuit Judges.

### PER CURIAM:

We are asked to complete a task, tracing back to early 1988, of adjudicating various reinsurance disputes involving the Louisiana Insurance Guaranty Association (LIGA). Over the course of this protracted litigation, we have paused for guidance from the Louisiana Supreme Court, have heard skilled oral argument in a complex consolidated appeal, and have witnessed an actively changing roster of litigants. We issued our opinion for the consolidated *Sifers* cases in January 1990.[1] Now, several litigants have properly directed our attention to issues that we failed to address.

The main unsettled issue is presented in No. 89–3453, *Dominick v. Houtech Inland Well Serv., Inc.*, a case consolidated with the *Sifers* group after the conclusion of oral argument. The matter is adequately framed and presented by the briefs, and we modify our prior opinion to include the following issue: In measuring its liability as a reinsurer, is LIGA entitled to reduce its $149,900 maximum statutory liability by the amount of the deductible contained in

John J. Cooper, Kenneth Beobay, New Orleans, La., for General Marine Catering, Inc.

Robert C. Stern, Perrin C. Butler, Perrin Butler, Ltd., Metairie, La., for Blair, et al.

Robert B. Nolan, Joseph B. Guilbeau, Debra B. Roven, Adams & Reese, New Orleans, La., for S.H.R.M. Catering.

Earl S. Eichin, Jr., O'Neil, Eichin & Miller, New Orleans, La., for First State Ins. Co.

Thomas E. Balhoff, Judith R. Atkinson, Carey J. Guglielmo, Charles A. Schutte, Jr., Matthews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, La., for Louisiana Ins. Guar. Ass'n.

Terry W. Sercovich, Belle Chasse, La., for Allied Towing Services, Inc.

S. Daniel Meeks, Abbott, Webb, Best & Meeks, New Orleans, La., for Sealift, Inc.

Kerry P. Camarata, Thibodaux, La., for John David Naples.

1. *See* 892 F.2d 386 (5th Cir.1990).

the policy issued by the defunct insurance carrier and by the claimant's recovery from an out-of-state insurance guaranty association?[2] We conclude that LIGA is entitled to offset from its statutory limit only the recovery received by the claimant from the out-of-state reinsurance association and not the policy deductible. Accordingly, in No. 89–3453 we affirm in part and reverse in part.

## I.

We begin our analysis by reciting the relevant facts which, by now, are all too predictable. William Smith received serious bodily injuries as a consequence of having fallen while transferring from his employer's (Houtech's) Louisiana-based rig onto a crewboat. At the time of Smith's accident, however, Houtech maintained a "Worker's Compensation/Employer Liability" (WC/EL) policy from the now-defunct Midland Insurance Company (Midland). The Midland policy included a $50,000 deductible for WC/EL claims.

Smith and his wife, Elsie Dominick, sued Houtech and joined LIGA as a defendant shortly after the State of New York ordered Midland, a New York corporation, to liquidate. However, in order to maintain the original schedule for trial, the claims against Houtech and LIGA were severed by the district court. The claims against Houtech were tried before a jury in July 1986. That trial was interrupted momentarily when Houtech, following the example of its WC/EL insurer, petitioned for Chapter 7 bankruptcy relief. However, the

bankruptcy court granted the plaintiffs' motion to lift the automatic stay so that the trial could proceed to judgment.[3] The jury awarded Smith $490,000, to be reduced fifty percent for comparative negligence.

As mandated by Louisiana's Insurance Guaranty Association Law (IGAL),[4] Smith initially prosecuted his claim against Houtech in Texas, the state of residence of the insured company.[5] In January 1987, Smith received $100,000 from the Texas Insurance Guaranty Association (TIGA), the maximum recoverable from that association. He thereafter pursued recovery for the unpaid balance of his judgment from LIGA.

LIGA argued before the district court that the $100,000 TIGA recovery should be credited against LIGA's $149,900 statutory limit, not against the $245,000 Houtech judgment. Adopting, *arguendo*, this approach, we would reduce LIGA's maximum exposure to $49,900. If LIGA were further afforded the benefit of the Midland policy's $50,000 deductible, LIGA would not be liable to Smith at all, and the unpaid balance of Smith's judgment ($145,000) would have to be satisfied by bankruptcy disbursements or by other means, if any.

The district court rejected LIGA's arguments as "not be[ing] consistent with LIGA's stated purpose, which is to 'avoid financial loss to claimants or policyholders because of the insolvency of an insurer.'"[6] Citing section 22:1386(2), which provides that "[a]ny recovery under this Part shall be reduced by the amount of recovery from

---

**2.** We also consider, *infra,* the various pending motions and petitions for panel rehearing.

**3.** The bankruptcy court reserved execution of any judgment against Houtech.

**4.** *See* La.Rev.Stat.Ann. §§ 22:1375 *et seq.* (West 1978 & Supp.1990).

**5.** La.Rev.Stat.Ann. § 22:1386(2) (West Supp. 1990) is designed to bar duplication of recovery from LIGA. *See Hickerson v. Protective Nat'l Ins. Co.,* 383 So.2d 377, 379 (La.1980). Completely self-serving, this provision requires plaintiffs to look to the insurance guarantee associations of other states for recovery, if at all possible, in cases in which the insured is a nonresident of Louisiana:

Any person having a claim which may be recovered under more than one insurance guaranty association or its equivalent shall seek recovery first from the association of the place of residence of the insured except that if it is a first party claim for damage to property with a permanent location, he shall seek recovery first from the association of the location of the property, and if it is a worker's compensation claim, he shall seek recovery first from the association of the residence of the claimant. Any recovery under this Part shall be reduced by the amount of the recovery from any other insurance guaranty association or its equivalent.

**6.** Quoting La.Rev.Stat.Ann. § 22:1376 (West 1978).

any other insurance guaranty association or its equivalent," the court credited the $100,000 that Smith received from TIGA against his $245,000 outstanding judgment. It further reduced his recovery by $50,000 (Midland's deductible) under the theory that LIGA stands in the shoes of Midland and thus enjoys the right to avail itself of the deductible in that policy. The resulting judgment hence was for the remainder, $95,000.

On appeal, LIGA challenges the court's method of calculating its liability exposure under the IGAL. Although LIGA, not surprisingly, agrees that it is owed a credit for the Midland policy deductible and for the TIGA payment, it disagrees that the credit should be offset against the $245,000 judgment. LIGA argues that the $150,000 aggregate offset should be made against its $149,900 statutory maximum, thereby eliminating any obligation to Smith. The methodology employed by the district court, LIGA suggests, ignores the plain language of section 22:1386(2), providing that *"[a]ny recovery* under this Part [the maximum being $149,900] *shall* be reduced *by the amount of recovery* from any other guaranty association or its equivalent" (emphasis added).

Further, LIGA emphasizes the distortions allegedly created by the district court's analysis: For example, Louisiana claimants who are injured in Louisiana, but whose employer is a nonresident and a member of another insurance association, enjoy broader potential recovery. LIGA states, for example, that had both the claimant and insured been residents of Texas, the total reinsurance recovery would have been limited to TIGA's $100,000 statutory cap. By comparison, had both the claimant and insured been Louisiana resi-dents, recovery would have been limited to LIGA's $149,900 maximum. However, in this case the district court endorsed a mechanism of "stacking" the two associations' statutory limits for purposes of satisfying the outstanding judgment.

LIGA argues in the alternative that Midland never paid assessments to LIGA to reinsure the particular Houtech policy at issue here. Assessments were paid to TIGA only, as the policy was allegedly written and delivered in Texas. LIGA concedes, however, that Midland paid assessments to LIGA pursuant to other policies written and delivered in Louisiana. That being so, as a public policy matter LIGA disavows any obligation to reinsure policies not assessed by LIGA.[7]

Smith argues that the district court properly interpreted the applicable law, which provides that the IGAL should be liberally construed.[8] He does not dispute that LIGA is entitled to an offset for TIGA's $100,000 payment or the $50,000 deductible, *if such adjustments are made with respect to the $245,000 judgment.* Reducing the statutory ceiling instead, we are told, would defeat the purpose of the act and lead to untenable hardship.

## II.

The Louisiana Supreme Court has not had the occasion to address this issue. However, the Supreme Court of Montana has, and we find that court's reasoning to be persuasive. In *Palmer v. Montana Ins. Guar. Ass'n,* 779 P.2d 61 (Mont.1989), a Montana claimant suffered injuries in excess of $1,000,000. An Idaho corporation was at risk for the claimant's injuries, but its insurance carrier had become insolvent, triggering coverage by the Montana Insurance Guaranty Association (MIGA), but not

---

**7.** We decline to address LIGA's belated challenge concerning Houtech's WC/EL policy assessments as not being presented to the district court and thus not amenable to appellate scrutiny. LIGA challenged its coverage in the district court on other grounds, none of which successfully discharged it from its obligation to reinsure Midland's policy here. The record is unclear concerning associational assessments made on Houtech's WC/EL policy. Accordingly, we conclude that LIGA forfeited its right to challenge Smith's claim on the ground that LIGA allegedly never assessed the Midland–Houtech WC/EL policy.

**8.** *See* La.Rev.Stat.Ann. §§ 22:1376, 22:1378 (West 1978), providing that the IGAL should be liberally construed to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer.

beyond its statutory maximum of $300,000. Like Louisiana, Montana requires that the claimant first seek recovery from another reinsurance association if the insured is a nonresident.[9] Recovery was first sought in this case from the Idaho Insurance Guaranty Fund, whereupon the claimant received Idaho's statutory maximum of $300,000.[10]

The claimant in *Palmer* then sued MIGA to "stack" Montana's $300,000 statutory limit upon Idaho's. The claimant argued that stacking was permitted among reinsurance associations to satisfy a claim otherwise in excess of the statutory maxima; MIGA, however, maintained that the recovery from Idaho discharged its liability completely. The Montana court ruled in favor of MIGA, holding that the relevant statutory language was unambiguous and required Idaho's reinsurance payment to be offset from Montana's $300,000 statutory limit, not the $1,000,000 in unsatisfied damages.[11] The dispositive Montana statutory language is identical to Louisiana's, both of which provide that *"[a]ny recovery* under this Part *shall be reduced* by the amount of recovery from *any other insurance guaranty association* or its equivalent" (emphasis added).

The *Palmer* court construed this provision as permitting recovery from more than one association, in principle, *presuming recovery from Idaho had not matched Montana's $300,000 limit.*[12] However, Montana law requires that MIGA's liability be reduced for any out-of-state reinsurance recovery. Reducing MIGA's obligation by the $300,000 received from Idaho discharge MIGA completely.

Applying *Palmer*'s rationale to the instant case, the $100,000 TIGA recovery reduces LIGA's reinsurance obligation to, at most, $49,900. The appropriate treatment of the Transit policy's $50,000 deductible, however, is more problematic, since that issue was never addressed by the *Palmer* court. Further, the IGAL is silent concerning the question of whether a policy's deductible merits a statutory offset.

■ We agree with the district court that LIGA steps into the shoes of the defunct insurer and can avail itself of the offsets that would have been enjoyed by Midland, if solvent. However, we depart with its conclusion that, as a consequence of this proposition, LIGA is entitled *per se* to apply the policy's deductible to reduce the association's statutory liability limit. Nothing in the IGAL or the caselaw supports such a rule.

Properly construed, the $50,000 deductible operates to make Houtech a self-insurer for WC/EL claims up to a value of $50,000 and does not operate, as the district court implies, to define the WC/EL policy's limitation on coverage. Assuming that Midland had remained solvent, the insurer would be at risk in this case for $195,000, representing the $245,000 judgment adjusted by the amount of the deductible.

It does not follow that LIGA is entitled to reduce its statutory maximum liability merely because $50,000 out of $245,000 is contractually borne by Houtech, *the insured,* as a cost for the partial self-insurance it bargained for in the policy. Stepping into the shoes of Midland, as the IGAL instructs, *but after giving Midland the benefit of the deductible,* the insolvent insurer remains obligated to Smith in excess of $149,900. Thus, the deductible is irrelevant in the instant case because it does not, when applied to the judgment, reduce the defunct insurer's liability below LIGA's statutory maximum.

Cases may arise in which the deductible operates to reduce LIGA's liability below the statutory $149,900 maximum. For example, if Smith had secured a $145,000 judgment (instead of $245,000) against Houtech, the deductible would reduce Transit's liability for the claim to $95,000. Stepping into Transit's shoes at this moment,

---

**9.** *See* 779 P.2d at 62. Montana's insurance guaranty law mimics the uniform model act adopted by Louisiana.

**10.** *Id.* at 63.

**11.** *See id.* at 64.

**12.** *See id.*

and after the deductible is accounted for, LIGA would be liable, at most, for $95,000. This approach is not the same as reducing the statutory maximum by the $50,000 Midland deductible ($99,900), the approach followed by the district court.

Unless the Louisiana legislature, or the state's courts, direct otherwise, we decline to redefine LIGA's statutory limit by the deductibles in the policies it is bound to reinsure. In this case, a solvent Midland would have been obligated to Smith in the amount of $195,000, of which LIGA is authorized by statute to provide reinsurance coverage of up to $149,900. Since TIGA has relieved LIGA of $100,000 of that obligation, $49,900 remains available to Smith as a covered claimant. That being so, the district court's judgment against LIGA is reduced from $95,000 to $49,900. The judgment in No. 89–3453 is AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

### III.

Several motions and petitions for rehearing have been filed since the issuance of our opinion. We address each separately.

### A.

We have reviewed the arguments of the parties and conclude that the district court committed no reversible error in No. 88–3308, *Duplantis v. Galuszka.* Accordingly, we GRANT the petition for rehearing, DENY intervenor Galuszka's motion for leave to file a response to the petition for rehearing, and AFFIRM the award of attorneys' fees to the intervenor, Galuszka, reflecting the measure of legal services that he provided to his client in this litigation.

### B.

The joint motions for dismissal of appeal and dismissal (without decision) of the application for rehearing in No. 87–4387, *Green v. Supreme Marine Management, Inc.,* and No. 89–4671, *Reed v. SHRM Catering Servs., Inc.,* are GRANTED.

### C.

The petition by LIGA for panel rehearing concerning the measure of attorneys' fee recoverable in No. 86–3494, *Sifers v. General Marine Catering Co.,* an issue that has twice been held waived, is DENIED.

The mandate shall issue forthwith.