Carolyn D. COX, et al., Respondents,

v.

**The MINNESOTA INSURANCE GUARANTY ASSOCIATION, Appellant.**

No. C4–93–969.

Court of Appeals of Minnesota.

Nov. 23, 1993.

Review Denied Jan. 14, 1994.

**538**

William J. Kranz, Montpetit, Freiling & Kranz, South St. Paul, for respondents.

Peter A. Koller, Charles E. Jones, Moss & Barnett, P.A., Minneapolis, for appellant.

Considered and decided by ANDERSON, C.J., and SHORT and THOREEN, JJ.*

## OPINION

ANDERSON, Chief Judge.

Appellant, Minnesota Insurance Guaranty Association (MIGA), denied a single claim for recovery made by respondents Caroline Lee Cox and Carolyn D. Cox (the Coxes). The Coxes appealed the denial of their claim to district court and also sought a declaratory judgment that they were entitled to recovery on three claims against MIGA. In response to summary judgment motions submitted by the parties, the district court ruled that the Coxes had one covered claim and ordered MIGA to pay its maximum liability of $299,900.

MIGA appeals the district court's award and its declaration that, pursuant to Minn. Stat. § 60C.13, subd. 2 (1992), the Coxes' MIGA recovery is not reduced by their recovery from any other state's guaranty fund. The Coxes filed a notice of review of the court's determination that, pursuant to Minn. Stat. § 60C.09, subd. 1 (1992), they have only one covered claim against MIGA. We affirm that the Coxes have only one covered claim against MIGA and reverse the ruling that the Coxes' MIGA recovery is not reduced by their recovery from another state's guaranty fund.

## FACTS

In 1987, Donald Lee Roat, an employee of Clinch on Corners, Inc. (C.O.C.), was driving a C.O.C. owned tractor-trailer in Georgia and struck Caroline Lee Cox's car. Roat was on duty at the time of the accident.

Respondents Caroline Lee Cox and her mother, Carolyn D. Cox, are Georgia residents. Roat is a Florida resident. C.O.C., a Delaware corporation, has its headquarters and principal place of business in Minnesota. It manufactures and distributes construction materials, maintaining manufacturing facilities in Minnesota, Florida, and Pennsylvania.

At the time of the accident, American Mutual Liability Insurance Company of Wakefield, Massachusetts (American Mutual) insured C.O.C. and Roat under two policies. The primary policy provided coverage up to $1,000,000. The umbrella policy provided $1,000,000 of additional coverage.

In 1989, the Coxes sued Roat and C.O.C. in Florida federal district court for damages incurred from the accident. In accordance with the policies' terms, C.O.C. tendered the defense of the Coxes' claim to American Mutual. Before trial, the Massachusetts Supreme Judicial Court declared American Mutual insolvent and the Florida Insurance Guaranty Association (FIGA)[1] assumed defense of the case.

In 1991, the federal court found C.O.C. liable for the accident. Caroline Lee Cox was awarded $1,327,500 in compensatory damages and Carolyn D. Cox recovered $109,631.09 for medical expenses she incurred on behalf of her daughter. FIGA appealed to the Eleventh Circuit Court of Appeals.

C.O.C. subsequently sought protection in the federal bankruptcy court of the district of Minnesota. As part of a court-ordered reorganization plan, C.O.C. settled with the Coxes. The Coxes agreed not to enforce their judgment against C.O.C., and C.O.C. withdrew its appeal. In addition, C.O.C. agreed to pay the Coxes $241,481.28 in 16 equal

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 10.

1. FIGA, like MIGA, is a state-sanctioned insurance guaranty association created to provide a

mechanism for payment of claims against insurance policies issued by insurers that become insolvent.

installments and to assign to the Coxes all of its rights, title, and interest under the American Mutual policies. Pursuant to this agreement, FIGA paid the Coxes its maximum liability of $599,900 on two covered claims.

In sum, the Coxes recovered $841,381.28 of their $1,437,131.09 judgment from FIGA and C.O.C. To recover the unpaid part of the judgment, the Coxes submitted one claim for $299,900 to MIGA, which denied the claim. The Coxes appealed the denial to the MIGA Board of Directors. The Board affirmed the denial.

The Coxes chose to appeal to the district court rather than the Commissioner of Commerce. *See* Minn.Stat. § 60C.12 (1992) (party may seek review of MIGA decision by the Commissioner of Commerce or the courts). The Coxes sought review of MIGA's decision and a declaration of their rights under the Minnesota Insurance Guaranty Association Act (MIGA Act). *See* Minn.Stat. §§ 555.01–16 (1992). In this declaratory judgment action, the Coxes expanded their claim against MIGA and sought recovery for three covered claims.

Both parties moved for summary judgment. The court found the Coxes had only one covered claim and ordered MIGA to pay its maximum statutory limit of $299,900. The court also denied MIGA's summary judgment motion and held that FIGA recovery is not offset against the MIGA claim after applying the statutory liability cap. MIGA appealed the district court's decision and the Coxes filed a notice of review.

## ISSUES

I. Did the district court exceed its authority by construing the MIGA Act in addition to reviewing MIGA's order denying recovery to the Coxes?

II. Did the district court err in finding that the Coxes had only one "covered claim" pursuant to Minn.Stat. § 60C.09, subd. 1 (1992)?

III. Does Minn.Stat. § 60C.13, subd. 2 (1992) require that the Coxes' recovery from FIGA be offset against the amount the Coxes are entitled to from MIGA?

## ANALYSIS

### I.

■ Before reviewing the district court's decision, we must first determine whether the court exceeded its authority by construing the MIGA Act in addition to reviewing MIGA's order denying the Coxes' recovery. Whether the district court properly reviewed the MIGA Board's decision and considered the declaratory judgment claim are purely legal questions. Thus, we review the issue de novo. *See Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985) (construction of a statute is clearly a question of law, fully reviewable by an appellate court).

■ The Coxes originally sought payment from MIGA on one covered claim in the amount of $299,900. In the district court action, the Coxes sought review of MIGA's order and brought a declaratory judgment action. MIGA argued that the district court should not address issues unless they are presented to an original adjudicatory body. *See, e.g.,* Minn.Stat. § 60C.12, subd. 3 (1992); *Qualle v. County of Beltrami*, 420 N.W.2d 256 (Minn.App.1988). Accordingly, MIGA contends that, when reviewing its order, the district court should not have addressed the issue of respondents' eligibility for more than one covered claim. We disagree.

■ Where a claimant wishes to obtain judicial construction of a MIGA Act provision, the claimant may pursue an appeal from MIGA's order or bring a declaratory judgment action in district court. *Ast v. Har Ned Lumber*, 483 N.W.2d 66, 68 (Minn.1992). Because the Coxes specifically sought a declaration of their rights pursuant to Minnesota Statutes Chapter 555, the district court had authority to construe the statute, and this court may review that construction de novo.

### II.

■ When reviewing an appeal from summary judgment, this court determines whether there are any material issues of fact and whether the district court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d

425, 427 (Minn.1988). We view the evidence in the light most favorable to the nonmoving party. *Abdallah, Inc. v. Martin,* 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954).

No one disputes the facts in this matter. The Coxes are appealing the district court's interpretation of Minn.Stat. § 60C.09 determining that they had only one covered claim. We find that the district court correctly construed section 60C.09.

The MIGA Act defines the term "covered claim" as:

> [A]ny unpaid claim, including one for unearned premium, which arises out of and is within the coverage of an insurance policy issued by a member insurer if the insurer becomes an insolvent insurer after April 30, 1979.

Minn.Stat. § 60C.09, subd. 1 (1992). Relying on statutory language and contract language found in both the primary and umbrella policies, the Coxes argue that they have three covered claims. The policies state:

> If this policy and any other policy issued to you by us or any company affiliated with us apply to the same accident, the aggregate maximum limit of liability under all the policies shall not exceed the highest applicable limit of liability policy under any one policy. *This condition does not apply to any policy issued by us or an affiliated company specifically to apply as excess insurance over this policy.*

(Emphasis added.) The Coxes assert that the umbrella policy was issued specifically to provide coverage for C.O.C. liability in excess of the million dollar limit on the primary policy.

■ The Coxes argue that Caroline Lee Cox has an unpaid claim under the primary policy. They also argue that, because the judgment in favor of Caroline Lee Cox exceeded the $1,000,000 cap on that policy, she has an unpaid claim under the umbrella policy. Because a covered claim is defined as an unpaid claim arising out of and within the scope of an insurance policy, they conclude that Caroline Lee Cox has two covered claims. In addition, they contend that Carolyn D. Cox also has an unpaid claim against

the primary policy, which constitutes a covered claim under the MIGA Act.

The district court reasoned, however, that subdivision 1 must be interpreted in relation to Minn.Stat. § 60C.09, subd. 3, which limits the amount paid on each covered claim.

> **Limitation of amount.** Payment of a covered claim, whether upon a single policy or multiple policies of insurance, is limited to the amount by which the allowance on any claim exceeds $100 and is less than $300,000.

Minn.Stat. § 60C.09, subd. 3 (1992).

■ Use of the language—"whether upon a single policy or multiple policies of insurance"—necessarily limits a claimant to one covered claim, regardless of whether the claimant has coverage under a single or multiple insurance policies. Although respondent Caroline Lee Cox is covered by both a primary and umbrella policy, under the MIGA Act she has only one covered claim.

■ Moreover, the assertion of Caroline Lee Cox's covered claim under the primary policy precludes Carolyn D. Cox from asserting a covered claim. Even though the Coxes assert two claims against the primary policy, the primary policy has a single, per-accident limit. Hence, there is only one covered claim.

The district court's interpretation is supported by the insurance policy language. In both the primary and umbrella policies, American Mutual agreed to pay damages incurred by C.O.C. on a per-accident basis. In contrast, the Coxes argue that because subdivision 3 sets the recovery limit on each covered claim, it governs each claim's liability only after it is determined to be a covered claim under subdivision 1. The district court's construction of section 60C.09 is more persuasive.

■ The Coxes had one judgment against American Mutual; consequently, they have one covered claim against MIGA. Although the Coxes' judgment is based on two insurance policies, pursuant to subdivision 3, payment on their one claim is limited to $299,-900. Therefore, we affirm the court's finding

that the Coxes have one covered claim under the MIGA Act.

## III.

■ The final issue this court must address is whether Minn.Stat. § 60C.13, subd. 2 (1992) requires an offset of the Coxes' recovery from FIGA against the amount the Coxes are entitled to from MIGA after applying section 60C.09's liability cap. Based on its finding that the MIGA Act is ambiguous, the district court found that the FIGA recovery is not offset against the amount MIGA is liable for after applying the MIGA Act's liability cap. Because we find section 60C.13, subd. 2 to be unambiguous, we do not agree with the district court.

The district court found that the term "recovery" under this section was ambiguous because it could signify either the MIGA liability limit of $299,900 or the amount of the covered claim before the statutory liability limit is applied. The statute provides:

Any person having a claim which may be recovered under more than one insurance guaranty association or its equivalent shall seek recovery first from the association of the state of residence of the insured. * * * Any *recovery under this chapter* shall be reduced by the amount of recovery from any other insurance guaranty association or its equivalent.

Minn.Stat. § 60C.13, subd. 2 (emphasis added).

Because the legislature used "payment" on a "covered claim" to represent the maximum amount MIGA must pay a claimant on a covered claim instead of using the term "recovery" in Minn.Stat. § 60C.09, subd. 3, the district court concluded that the statute is ambiguous (supra p. 8). The court reasoned that "recovery" in Minn.Stat. § 60C.13 may signify the amount to be paid on a covered claim before section 60C.09's liability cap is applied and not the maximum amount MIGA is required to pay a claimant after the cap is applied.

We find the plain meaning of "recovery under this chapter" can only mean MIGA's obligation to a claimant as created and defined by Chapter 60C. "Recovery" is the amount arrived at after applying the liability limit set forth in 60C.09, subd. 3.

Both parties define "amount of recovery" from any other insurance guaranty association as the amount of liability that the association has after applying its statutory liability cap. Logically, then, "recovery under this chapter" would be defined in the same manner. Other jurisdictions have construed identical provisions and unanimously support our interpretation. *See, e.g., Sifers v. General Marine Catering Co.,* 897 F.2d 1288, 1292 (5th Cir.1990); *Cooper v. Huddy,* 581 So.2d 723, 727–728 (La.Ct.App.), *writ denied,* 585 So.2d 552 (La.1991); *Palmer v. Montana Ins. Guar. Ass'n,* 239 Mont. 78, 779 P.2d 61, 64 (1989) (recovery after applying statutory liability cap must be offset by recovery from other states' guaranty associations); *see also Oglesby v. Liberty Mut. Ins. Co.,* 832 P.2d 834, 844–845 (Okla.1992) (recovery from Oklahoma Guaranty Association must be offset by recovery from other states' guaranty associations).

Minnesota, Montana, and Louisiana have all adopted the same language from the National Association of Insurance Commissioners Model Act relating to insurance guaranty associations. The Model Act framers' comments to this provision support the conclusion that payments from another association are offset against MIGA's obligation after the liability limit is applied:

This subsection does not prohibit recovery from more than one Association, but it does describe the Association to be approached first and then requires that any previous recoveries from like Associations must be set off against recoveries from this Association.

*Palmer,* 779 P.2d at 64.

The Minnesota Legislature's adoption of the Model Act language demonstrates its intent that MIGA play a role in a national network of such associations. This court construes Minnesota's version of the Model Act to effect the general purpose of making uniform the laws of all states enacting the Model Act. *See* Minn.Stat. § 645.22 (1992).

## DECISION

We hold the Coxes have only one covered claim, entitling them to a $299,900 award pursuant to section 60C.09, subd. 3. Against this amount must be offset the amount recovered from any other state's guaranty fund pursuant to section 60C.13, subd. 2. The Coxes recovered $599,900 from FIGA. Therefore, the Coxes are not entitled to any recovery from MIGA.

**Affirmed in part and reversed in part.**