762 A.2d 1066 (2000)
335 N.J. Super. 510
CARPENTER TECHNOLOGY CORPORATION, Plaintiff-Appellant-Cross-Respondent,
v.
ADMIRAL INSURANCE COMPANY, Aetna Casualty and Surety Company, AllState Insurance Company (as successor in interest to Northbrook Insurance Company), American Insurance Company, Highlands Insurance Company, Insurance Company of North America, International Insurance Company, Lexington Insurance Company, Pacific Employers Insurance Company, Pennsylvania Insurance Guaranty Association, United States Fire Insurance Company, Executive Re Indemnity, Inc., Allianz Insurance Company, First State Insurance Company, Associated International Insurance Company, Indemnity Insurance Company of North America, Underwriters at Lloyd's, London, and London Market Companies, Including Dominion Insurance Company, Excess Insurance Company, Highlands Insurance Company, London & Edinburgh General Insurance Company Limited, Stronghold Insurance Company Limited, and Turegum Insurance Company, Defendants, and
New Jersey PropertyLiability Insurance Guaranty Association, Defendant-Respondent-Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 15, 2000.
Decided December 18, 2000.
*1067 Steven E. Speece, Wayne, PA, of the Pennsylvania Bar, admitted pro hac vice, argued the cause for appellant-cross-respondent (Brown & Connery, attorneys; Mr. Speece and Michael J. Vassalotti, Westmont, on the brief).
Mark M. Tallmadge, Florham Park, argued the cause for respondent-cross-appellant (Susan L. Moreinis, Collingswood, attorney; Ms. Moreinis, on the brief).
Before Judges COBURN, AXELRAD and BILDER.
The opinion of the court was delivered by BILDER, J.A.D. (retired and temporarily assigned on recall).
This appeal arises from a declaratory judgment action in which plaintiff Carpenter Technology Corporation sought a declaration of coverage under multiple comprehensive general liability insurance polices issued by various defendants for claims brought against Carpenter by New Jersey and the federal government for alleged environmental contamination. Three of the insurers were insolvent with the result that the New Jersey Property-Liability Insurance Guaranty Association (NJPLIGA) and the Pennsylvania Insurance Guaranty Association (PIGA) became defendants.
Carpenter has settled with the parties except NJPLIGA, and even with respect to NJPLIGA most of the issues have been resolved without appeal. There remain only two contested issues.
First, the amount of credit NJPLIGA is entitled to receive as a result of plaintiff's claim against PIGA. It is uncontested that PIGA is the primarily liable guaranty association. Under the Pennsylvania law creating PIGA, its statutory limit is $299,900 per claim. Plaintiff settled its claims against PIGA for lesser sums. The contested issue is the amount of credit NJPLIGA is entitled to with respect to PIGA primary liability. The trial judge, in orders of October 23, 1998 and August 19, 1999, declared that NJPLIGA is entitled to a credit per "covered claim" in an amount equal to PIGA's maximum statutory limits, i.e. $299,900, and that consequently NJPLIGA's maximum obligation *1068 to plaintiff is $100 per "covered claim", i.e. NJPLIGA's maximum statutory limit of $300,000 less PIGA's maximum statutory limit of $299,900. Plaintiff appeals, contending that NJPLIGA is not entitled to a credit for more than plaintiff received from PIGA in settlement.
Second, the number of "covered claims" for which NJPLIGA is liable to plaintiff. In the order of August 19, 1999, the trial judge found the total number of "covered claims" to be 65 and entered a judgment in favor of plaintiff against NJPLIGA in the sum of $6500. NJPLIGA cross-appeals contending that there are only 11 "covered claims".

The credit to which NJPLIGA is entitled.
The real question here is the proper interpretation of N.J.S.A. 17:30A-12a which in pertinent part reads as follows:
Any person having a covered claim which may be recovered from more than one insurance guaranty association or its equivalent shall seek recovery first from the association of the place of residence of the insured at the time of the insured event except that if it is a first party claim for damage to property with a permanent location, he shall seek recovery first from the association of the location of the property. Any recovery under this act shall be reduced by the amount of recovery from any other insurance guaranty association or its equivalent.

[(emphasis added)]
Plaintiff contends the plain language of the statute limits NJPLIGA's credit to the settlement amounts it received from PIGA.[1] Superficially it would seem to be so. However NJPLIGA contends that such an interpretation would do violence to the purpose of the legislation which created New Jersey's guaranty association.
Although the interpretation of this statute is novel to us, NJPLIGA notes that this offset provision is identical to that contained in the model act designed by the National Association of Insurance Commissioners and seeks to rely on the interpretations of other state courts to support its position. It points to Palmer v. Montana Insurance Guaranty Ass'n, 239 Mont. 78, 779 P.2d 61 (1989) as the oft-cited leading case. Its reliance on Palmer is misplaced.
In Palmer the insured, Palmer, had received the statutory maximum of $300,000 from the primary guaranty association (Idaho Insurance Guaranty Fund) and was seeking in addition the Montana Guaranty Association's $300,000 statutory maximum. The lower court had interpreted the Idaho offset as applying to the insured's total claim (which exceeded the $1,000,000 coverage afforded by the insolvent insurer), thus permitting the stacking of the coverage limits of the two guaranty associations. Id. at 62-63. Therefore, in addition to the $300,000 the insured received from the Idaho Insurance Guaranty Fund, Palmer obtained a judgment for $300,000 against the Montana guaranty association. Id. at 63.
On appeal, the Montana Supreme Court defined the issue thus: "Was the Montana Insurance Guaranty Association entitled to offset amounts Palmer received from the Idaho Insurance Guaranty Fund against its statutory maximum?" Ibid. Finding the language of the offset clause to be clear and unambiguous, the court held that the Montana guaranty association was entitled to offset the $300,00 paid by the Idaho guaranty fund against the Montana guaranty fund's statutory limit of $300,000. Id. at 64. Plaintiff in Palmer was denied further compensation from Montana because his recovery from Idaho was equal to Montana's statutory limit.
*1069 An examination of the other cases relied on by NJPLIGA discloses that in every one the court found the offset statute clear and unambiguous and applied it literally. In each case involving prior payments by an out-of-state guaranty association, the payments represented the statutory maximums. The defendant guaranty association was entitled to the out-of-state's statutory maximum because that was the amount of the insured's recovery.[2]
Absent a clear indication to the contrary, language in a statute is to be read in accordance with its plain and ordinary meaning. Service Armament Co. v. Hyland, 70 N.J. 550, 556, 362 A.2d 13 (1976). Our duty is to construe and apply the statute as enacted. We are not at liberty to presume the legislature intended something other than what it expressed by its plain language. This court will not engage in conjecture or surmise which will circumvent the plain meaning of the act. Gangemi v. Berry, 25 N.J. 1, 10, 134 A.2d 1 (1957).
As an apparent afterthought, NJPLIGA now asserts a duty on the part of plaintiff to show the reasonableness of its settlement with PIGA. We find nothing in the record to show that this issue was raised below. It cannot be raised for the first time on appeal. Skripek v. Bergamo, 200 N.J.Super. 620, 629, 491 A.2d 1336 (App.Div.1985); R. 2:6-2. We note however that this may well be an issue on remand.
We hold that NJPLIGA is entitled to credit only for the amounts actually received by plaintiff from PIGA. Since this does not appear in the record, the matter must be remanded for a determination of the proper credit.

The number of "covered claims."
A "covered claim" is an unpaid claim which arises out of and is within the coverage, and not in excess of the applicable limits of an insurance policy to which the New Jersey Property-Liability Insurance Guaranty Association Act applies. N.J.S.A. 17:30A-5d.
The controversy between plaintiff and NJPLIGA arises from claims brought against plaintiff by New Jersey and the federal government for alleged environmental contamination during a period from 1967 to 1985 at four sites, all covered by policies issued by one of the insolvent carriers, American Mutual Ins. Co. In his order of August 19, 1999, the trial judge found that plaintiff was entitled to collect from NJPLIGA with respect to 57 covered claims asserted against primary policies issued by American and 8 covered claims asserted against excess policies issued by American.
In an earlier phase of the litigation, carriers who were excess to American's primary policies sought to increase the attachment point for their excess coverage by arguing that the American policies were aggregate policies providing one million dollars of coverage each year for each of the four sites or an aggregation of four *1070 million dollars of coverage per policy year. The trial judge ruled the American policies had been issued on an aggregate basis but provided coverage of one million dollars per policy year per occurrence, that the attachment point for excess insurance was one million dollars per occurrence.
On appeal, NJPLIGA contends that in view of the prior ruling on the aggregate nature of the American policies, NJPLIGA's obligation should be applied to the aggregate annual claim thus resulting in a single limit for the guaranty association of $300,000 for each policy year. Because in most years there were claims with respect to more than one site, the resulting total would be reduced from the 67 covered claims to 11 covered claims.
Defendant's contentions are without merit. R. 2:11-3(e)(1)(A) and (E). Plaintiff's position with respect to the contentions of the excess insurers is not inconsistent with its position as to NJPLIGA's obligations. The plain language of the statute supports the trial judge's conclusion that NJPLIGA is liable, up to its statutory limit for each occurrence, limited of course to the $1,000,000 aggregate per policy year coverage afforded by the American policies.

Conclusion
The order of October 23, 1998 is reversed. The order of August 19, 1999 to the extent it declares NJPLIGA is entitled to a credit per covered claim in an amount equal to the maximum statutory limits of PIGA and fixes the amount due to plaintiff at $100 per claim is reversed. The order of August 19, 1999 to the extent it fixes the number of covered claims to which plaintiff is entitled to receive payment at 65, is affirmed. The matter is remanded for a determination of the amount of credit to which NJPLIGA is properly entitled and further proceedings consistent with this opinion. Jurisdiction is not retained.
NOTES
[1] Plaintiff concedes NJPLIGA's liability is limited by the coverage afforded by the insolvent insurer's policies, N.J.S.A. 17:30A-5d, found by the trial judge to be an aggregate of $1,000,000 per policy year.
[2] Other cases relied on by NJPLIGA are similarly distinguishable.

Mosier v. Oklahoma Property and Casualty Insurance Guaranty Assn., 890 P.2d 878 (Okl. 1994), involved the right of the guaranty association to set off workers' compensation benefits paid to the plaintiff. The recitation of the history of the case shows that plaintiff settled his claim against an out-of-state guaranty association for $75,000, less that its $100,000 statutory limit. The Court of Appeals held that the Oklahoma cap of 150,000 must be reduced by the full $100,000 the out-of-state guaranty association could have been required to pay. Plaintiff did not seek certiorari with respect to this ruling and thus it was not before the Oklahoma Supreme Court and was not reviewed by it. In our research we have been unable to discover the lower court opinion nor the reasoning which led it to its conclusion.
In Kenny v. Hoschar, 675 So.2d 807 (La. App.4th Cir.1996), the plaintiff settled below the policy limit with her uninsured motorist carrier. In finding that the Louisiana Insurance Guaranty Association was entitled to credit for the full amount of the UIM policy, the Court interpreted a statute, irrelevant to this litigation, which gave the association credit for "any amount payable" by other insurance. Id. at 810.