853 P.2d 726

**AZTEC WELL SERVICING CO., INC., Gary Dean Cole, Stanley S. Brooks, Max Larson, and Andrew K. Brashear, Plaintiffs–Appellees,**

v.

**PROPERTY & CASUALTY INSURANCE, GUARANTY ASSOCIATION OF the STATE of New Mexico, Defendant–Appellant.**

No. 20569.

Supreme Court of New Mexico.

May 10, 1993.

---

Felker, Ish, Hatcher, Ritchie, Sullivan & Geer, P.A., Carol J. Ritchie, Santa Fe, for defendant-appellant.

Tansey, Rosebrough, Gerding & Strother, P.C., Richard L. Gerding, Farmington, for plaintiffs-appellees.

## OPINION

FROST, Justice.

Aztec Well Servicing Company, Inc. ("Aztec") filed a declaratory judgment action against the New Mexico Property and Casualty Insurance Guaranty Association (the "Association") in the District Court of Santa Fe County on behalf of four claimants: Gary Dean Cole, Stanley S. Brooks, Max Larson, and Andrew K. Brashear ("the claimants").[1] From the District

---

1. Brashear's claim was fully satisfied before the trial below, and the District Court correctly found that he did not have a "covered claim." The parties apparently agreed with the court

Court's decision on the merits in favor of Aztec, the Association appeals. As to the issues in sections I and II of this opinion, the Court is unanimous. As to the issue in section III regarding prejudgment interest, the special concurrence authored by Justice Montgomery represents the majority opinion.

## FACTS

Each of the claimants was injured in an oil well fire, and they sued Aztec and other defendants in a personal injury action. In a jury trial on liability only, the jury found Aztec 25% at fault for the injuries to Brooks and Larson and 23% liable for the injuries to Cole. After the jury trial on liability, Aztec stipulated to the claimants' damages as follows: Cole—$2.6 million of which Aztec's 23% liability share equalled $598,000; Brooks—$800,000 of which Aztec's 25% share was $200,000; and Larson—$600,000 of which Aztec's 25% share was $150,000.

Aztec's primary insurance carrier was Home Insurance Company with which Aztec had liability insurance with policy limits of $300,000. Aztec carried excess insurance coverage with Mission National Insurance Company ("Mission"), which provided coverage for losses in excess of $300,000 up to $10 million. Mission became insolvent, however, during the settlement negotiations with the claimants in which its attorneys participated. Aztec then entered into settlement agreements with each of the claimants.

Under the settlement agreements that Aztec negotiated, Home Insurance paid Cole $300,000, which constituted its policy limits and Aztec's entire insurance proceeds. Aztec itself paid $67,500 to Brooks and $20,000 to Larson. Each claimant released Aztec from further claims, and Aztec agreed to pursue an action against the Association on their behalf.

After Mission's insolvency, Aztec received notice that Mission was being liquidated and later received a claim form from the Department of Insurance for the State of California (the "Conservator"). The Conservator had partially filled out the form. Aztec completed the form, stating that multiple personal injury claims were outstanding and unliquidated. In the claim form, Aztec also made reference to the claimants' pleadings and settlement documents that it already had provided to Mission. There was no dispute that Aztec's proof of claim was timely filed.

## PROCEDURAL HISTORY

After its claims were denied, Aztec filed this action against the Association, seeking the maximum statutory recovery of $100,000 per claimant under the Property and Casualty Insurance Guaranty Law, NMSA 1978, Sections 59A–43–1 to –18 (Repl.Pamp.1992) (the "Act"). Eventually, the Association moved for summary judgment in the District Court. The parties agreed that affidavits and answers to discovery were dispositive on summary judgment and provided all of the information necessary for a decision on the merits of the case.

The District Court found that prior to its insolvency, Mission retained attorneys to represent its interests, that they recommended settlement of the claims, and that accordingly Mission had actual notice of the claims which the Court imputed to the Association. The District Court also found that the proof of claim which Aztec filed was timely and sufficient to place the Association on notice of the claims. In addition, the Court concluded that the Association, by law, stood in the shoes of Mission and assumed all rights, duties, and obligations of Mission. The Court also found that the actual damages of the claimants exceeded the amounts received from Aztec and that their unpaid claims were covered under the Act. The District Court held, therefore, that the claimants were entitled to receive $100,000 each from the Association, plus prejudgment interest at the statutory rate from the filing of the complaint to the date of judgment, and costs.

because the briefs on appeal referred to Cole, Brooks, and Larson only.

## ISSUES

### I. *Interpretation of the Act*

The Association is a statutory entity, which consists of all property and casualty insurers doing business in New Mexico, that administers a fund comprised of assessments upon member insurers to pay claims made upon insolvent insurers. *See* NMSA 1978, § 59A–43–2 (Repl.Pamp.1992); *In re Mission Ins. Co.*, 112 N.M. 433, 435, 816 P.2d 502, 504 (1991); *see also* 2A Couch on Ins.2d, § 22:27 at 599 (Rev. ed. 1984); 19A Appleman, Ins. Law & Practice, § 10801–02 at 364 (Rev.Vol.1982). The stated purpose of the Act is "to provide a mechanism for payment of covered claims under certain insurance policies to avoid ... financial loss to claimants or policyholders because of insolvency of an insurer...." Section 59A–43–2. Under the Act, the Association is obligated to the policyholder or claimant for a "covered claim" that exists before insolvency of the insurer and for claims arising within 30 days after the determination of insolvency. Section 59A–43–7(A)(1). Thus, the Association's liability is triggered by the insolvency of the insurer, and it is for all practical purposes deemed to be the insurer just as if the insurer were solvent. Section 59A–43–7(A)(2).

### A. *Cole*

■ On appeal, the Association argues that the District Court erred in holding that Cole's claim was a "covered claim" under Subsection 59A–43–4(C), which reads:

"covered claims" means an *unpaid claim* of an insured or of a liability claimant ... that arises out of and within the coverage and not in excess of the applicable limits of an insurance policy ... issued by an insurer authorized to transact insurance in this state, if such insurer becomes an insolvent insurer.... (Emphasis added)

The Subsection also limits individual covered claims to $100,000. The Association essentially asserts that Cole did not have an unpaid claim. The Association denies that Cole was entitled to recover any amount under the Act because his recovery from Home Insurance should offset the entire liability of the Association. The Association contends that under Section 59A–43–11(A), entitled "Nonduplication of recovery," any amount payable on a covered claim must be reduced by any amount recovered from any other insurance policy. It follows, according to the Association, that because Cole recovered more than $100,000 from another insurance policy, he should receive no recovery under the Act. Aztec asserts that such an interpretation is absurd, and we agree.

The relevant part of Section 59A–43–11(A) states: "Any amount payable on a covered claim under this article shall be reduced by the amount of any recovery available *under such insurance policy.*" (Emphasis added). The emphasized language refers to the policy described in the first sentence of Section 59A–43–11(A), which states that any "person having a claim against any insurer under any provision in an insurance policy ... other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his rights under the policy."

■ The Association urges upon us a strict interpretation of the Act because it was enacted in derogation of the common law, but this ignores the fact that the Legislature provided for liberal construction of the Act to implement its purposes. *See* 1984 N.M.Laws, ch. 127, § 785, p. 1259. Our interpretation of the statute must be consistent with legislative intent, and our construction must not render the statute's application absurd, unreasonable, or unjust. *City of Las Cruces v. Garcia*, 102 N.M. 25, 26–27, 690 P.2d 1019, 1020–21 (1984).

■ Although our statute is not a model of lucidity,[2] we read Section 59A–43–11(A)

---

2. *See Arizona Property & Casualty Ins. Guar. Fund v. Herder*, 156 Ariz. 203, 751 P.2d 519, 523 (1988). Other courts have construed language almost identical to that in Section 59A–43–11(A). The Supreme Court of Vermont determined that similar language in its statute was "ambiguous if not contradictory." *See International Collection Serv. v. Vermont Property & Casualty Ins. Guar. Ass'n*, 150 Vt. 630, 555 A.2d 978, 980 (1988). In addition, the Court of Ap-

to apply to situations in which the insured is entitled to proceeds from two collateral policies insuring against the same risk, one of which becomes unavailable due to insolvency. In such situations, the Act requires the insured to exhaust first its available insurance coverage before seeking recovery from the Association. For example, if Aztec had another excess insurance policy, the proceeds of which were available in this situation, then the Act would require the application of such proceeds to offset the claimants' damages before seeking recovery from the Association under the Act.

■ Unlike the construction given by the Association, therefore, the reasonable interpretation of Section 59A–43–11(A) is that it requires an offset of proceeds available to the claimant from another insurance policy that is not insolvent and does not constitute a "covered claim" under the Act. In addition, the offset is applied against the insured's liability, or against the claimant's damages as the case may be, not against the statutory amount of liability of the Association. *See International Collection Serv. v. Vermont Property & Casualty Ins. Guar. Ass'n,* 150 Vt. 630, 555 A.2d 978, 980 (1988); *Arizona Property & Casualty Ins. Guar. Fund v. Herder,* 156 Ariz. 203, 751 P.2d 519, 523 (1988) (reaching same result).

To require an offset, as the Association urges, of the amount recovered from the primary insurance carrier against the Association's liability would be absurd because it was that recovery which triggered the application of Mission's excess insurance policy in the first place.[3] Moreover, to interpret the Act as the Association does would eviscerate its express purpose of avoiding financial loss to a legitimate claimant as a result of the insolvency of its insurer to which the claimant paid premiums. *See Connecticut Ins. Guar. Ass'n v. Union Carbide Corp.,* 217 Conn. 371, 585 A.2d 1216, 1225 (1991).

■ Our interpretation also is consistent with the intent of the Legislature to avoid duplication of recovery as expressed in the title to Section 59A–43–11(A). This Subsection was designed to prevent double recovery or windfall, not to reduce the amount of the claimant's damages that remain partially unsatisfied. *Id.* It is self-evident that payment from an excess insurance policy after the exhaustion of primary coverage is not duplicative. Bound to interpret the Act to implement the Legislature's intent without making its application an absurdity, we hold that payment from the primary insurer cannot be used to offset the Association's pecuniary obligations for the insolvent excess insurer. *See Washington Ins. Guar. Ass'n v. McKinstry Co.,* 56 Wash.App. 545, 784 P.2d 190, 192, *cert. denied,* 114 Wash.2d 1017, 791 P.2d 535 (1990) (noting statute's purpose of avoiding financial loss to claimant, court held that allowing association to offset payments from primary insurer against its liability when it stands in shoes of an insolvent excess insurer would contravene purpose of statute).

It is clear, then, that the District Court was correct in holding that Cole was entitled to an award of $100,000 from the Association. Here, the depletion of proceeds from Aztec's primary insurance policy triggered Mission's excess insurance policy. Thus, if Mission were solvent, it would be liable to Cole under its policy for $298,000, the remaining amount of its insured's liability to Cole. Because Mission became insolvent, however, the statute triggered the liability of the Association. Accordingly, the Association steps into the shoes of the

peals of Washington interpreted a similar offset provision, and in its discussion referred to the "practical inconsistencies and ambiguities" of the statute. *See Washington Ins. Guar. Ass'n v. McKinstry Co.,* 56 Wash.App. 545, 784 P.2d 190, 192, *cert. denied,* 114 Wash.2d 1017, 791 P.2d 535 (1990).

3. The Association relies heavily on opinions from the Iowa and Montana Supreme Courts.

Both cases, however, involved the application of specific statutory provisions that required a credit reduction of a recovery from other sources against the liability of the association. As such, those cases are inapposite. *See Stecher v. Iowa Ins. Guar. Ass'n,* 465 N.W.2d 887, 888 n. 2 (Iowa 1991); *Palmer v. Montana Ins. Guar. Ass'n,* 239 Mont. 78, 779 P.2d 61, 64 (1989).

insolvent insurer, and for all practical purposes it *is* the insolvent insurer except that the Association is only liable for up to $100,000 per claim. *See* § 59A–43–4(C). The Association, therefore, became bound by law to the extent of Mission's obligations on the excess insurance policy just as if Mission had not become insolvent. *See* § 59A–43–7(A)(2).

### B. *Brooks and Larson*

■ The Association argues on one hand that it was not bound by Aztec's settlement agreements with Brooks and Larson because Mission did not approve or ratify the agreements. After its insolvency, neither Mission nor the Association participated in the settlement negotiations. The Association contends that the District Court had to conclude that it was bound by the settlement agreements to justify an award to the claimants. On the other hand, the Association argues that if it were bound, it would be liable only for amounts paid to Brooks and Larson under the settlement agreements.

Again, the Association misses the point. To constitute a covered claim under the Act, the District Court did not have to conclude that the Association was bound by the settlement agreements with Brooks and Larson. The District Court correctly analyzed the statute and found that their damages exceeded the proceeds available under Aztec's primary insurance policy, thus bringing Mission's excess policy into effect. Because Mission became insolvent and their claims remained unpaid, the Association's statutory liability was triggered. Brooks and Larson, therefore, were entitled to an award of $100,000 each under the Act. Any settlement agreement by Aztec with Brooks and Larson was irrelevant to whether they had a covered claim under the Act. The Association undertook Mission's obligations under the excess insurance policy, not Aztec's obligations under its settlement agreements. The District Court, therefore, was correct in holding that both Brooks and Larson were entitled to an award from the Association.

### II. *Sufficiency of Notice*

■ The Association also argues that the District Court's award to Cole must be overturned because he failed to give timely notice of his claim as required by the Conservator and NMSA 1978, Section 59A–41–21(A) (Repl.Pamp.1992). The Association claims that invalid notice to the Conservator defeats Cole's claim against the Association. According to the Association, only Brooks and Larson gave the proper notice by way of the proof of claim that Aztec filed on their behalf. The Association essentially claims that Aztec should have filed three separate proof of claim forms with the Conservator, one for each claimant. Aztec asserts that Mission had actual notice of the claims, which should be imputed to the Association, and that while its proof of claim form did not explicitly denote Cole's claim, it was sufficient to notify the Association and the Conservator of the various claims by Aztec.

■ Without deciding whether actual knowledge by Mission may be imputed to the Association, we conclude that Section 59A–41–21(A) does not require notice to the Association; it requires notice only to the domiciliary receiver, in this case the Conservator, or the ancillary receiver. Aztec, as the insured and the real claimant, amply notified the Conservator in its proof of claim form of the claimants' personal injury claims precipitating coverage under Mission's policy. That is all Section 59A–41–21 requires. Even though the proof of claim form did not specifically denote Cole as a claimant, we hold that it substantially complied with Section 59A–41–21(B). The Association has referred us to no persuasive authority that would justify its position, which essentially is that strict compliance with notice requirements is jurisdictional in this case. We decline to adopt such a position because it would defeat the Act's salutary statutory purpose noted above and would be contrary to the Legislature's direction to liberally construe the Act to implement that purpose.

Thus, the District Court was correct in determining that the claimants were entitled to a recovery from the Association in

the amount of $100,000 each. Accordingly, the District Court's award of covered claims to Cole, Brooks, and Larson is affirmed.

### III.  *Prejudgment Interest*

Last, the Association contested the District Court's award of prejudgment interest and costs to the claimants, arguing that the statutory limit on covered claims and the specific exclusion of interest and costs under the Act precluded such an award.  The limitations clause provides that:

> individual "covered claims" shall be limited to [$100,000] *and shall not include any amount in excess of [$100,000],* and the total amount of covered claims which may be asserted by any claimant, including also covered claims brought by any party on behalf of such claimant or as a result of injuries to such claimant shall not exceed [$100,000] per occurrence. . . .

Section 59A–43–4(C) (emphasis added). The same Subsection also provides that a covered claim "shall not include supplementary payment obligations, including but not limited to adjustment fees and expenses, attorneys' fees and expenses, court costs, interest and bond premiums incurred prior to the determination that an insurer is an insolvent insurer. . . ." *Id.*

As stated at the beginning of this opinion, the Court is divided on the issue of prejudgment interest as discussed in the present section of this opinion. The majority takes the view that the district court properly awarded prejudgment interest and costs, for the reasons set out in Justice Montgomery's concurring opinion below. The undersigned and Justice Baca disagree with this view; this section therefore represents a dissenting opinion on the issue of prejudgment interest.

Aztec asserted and the majority holds that an award of prejudgment interest rests within the discretion of the trial court

under NMSA 1978, Section 56–8–4(B) (Repl.Pamp.1986) and cannot, therefore, be subject to the statutory cap.  In addition, Aztec argued and the majority holds that the statute only excludes costs and interest from the definition of "covered claim," but does not proscribe an award of interest in addition to an award of a covered claim. To support its interpretation, Aztec offered the example of Section 59A–43–7(B)(1), which permits the Association to settle and pay claims including an award of attorneys' fees and costs in addition to an award for a covered claim.[4]

We are not persuaded by Aztec's arguments; rather, we believe that the Act is clear in limiting compensation to an individual claimant in the form of a "covered claim" to $100,000 per occurrence, and a covered claim is all that the Association is authorized to award a claimant as compensation. *See* § 59A–43–4(C).  In this State, prejudgment interest is compensation for the loss of the use of funds to which the claimant is entitled, and it is considered an item of damages. *See Ranch World of N.M., Inc. v. Berry Land & Cattle Co., Inc.,* 110 N.M. 402, 404, 796 P.2d 1098, 1100 (1990); *United Nuclear Corp. v. Allendale Mut. Ins. Co.,* 103 N.M. 480, 488, 709 P.2d 649, 657 (1985); *Bradbury & Stamm Constr. Co. v. Bureau of Revenue,* 70 N.M. 226, 238, 372 P.2d 808, 816 (1962). The District Court's award of prejudgment interest was improper, therefore, because the compensation in this case including the prejudgment interest exceeded the express statutory limit for a covered claim.[5]  *See Sands v. Pennsylvania Ins. Guar. Ass'n,* 283 Pa.Super. 217, 423 A.2d 1224, 1229 (1980) (construing similar statutory language, court excluded prejudgment interest from "covered claim" because it would have exceeded statutory limit).

In addition, the majority turns the exclusion of interest from a "covered claim" on its head.  The majority states that because

---

4.  Section 59A–43–7(B)(1) states: "Though not a covered claim as defined in [Section 59A–43–4(C)], the association may, if it determines it necessary to the settlement and disposition of claims, pay adjustment fees and expenses, and attorney's fees and expenses incurred prior to

the determination that an insurer is an insolvent insurer; . . . ."

5.  It was undisputed that the total recovery per claim including prejudgment interest would exceed the statutory limit.

Section 59A–43–4(C) makes it clear that interest is excluded as an element of compensation in a "covered claim," interest may be granted in addition to an award, notwithstanding the statutory cap. The Act authorizes the Association, however, to award a recovery only for "covered claims," except when it may exercise its discretion to award attorneys' fees and costs. Section 59A–43–7(B)(1) merely allows the Association to exercise its discretion in administering claims and does not direct it to award attorneys' fees and costs in all circumstances. In no event may the Association exercise its discretion to award prejudgment interest in addition to a "covered claim" and thereby exceed the statutory limit.

The statutory cap on compensation here does not usurp the trial court's exercise of discretion to award prejudgment interest because the trial court may not compel the Association to award what the law has not authorized it to award. In addition, it is well-settled that a statute dealing with a specific subject will be given effect over a more general statute encompassing the same subject. *Stinbrink v. Farmers Ins. Co. of Ariz.*, 111 N.M. 179, 182, 803 P.2d 664, 667 (1990). For example, in *State ex rel. Human Servs. Dep't v. Judy H. (In re Melissa H.)*, 105 N.M. 678, 735 P.2d 1184 (Ct.App.), *cert. denied*, 105 N.M. 644, 735 P.2d 1150 (1987), the Court of Appeals determined that a specific statute governing the award of costs and expenses prevailed over the general rule of awarding costs and expenses in civil litigation. *Id.* 105 N.M. at 679, 735 P.2d at 1185. The Court rejected the argument that because the specific statute did not contain a provision for the award of certain costs, the general rule for awarding costs applied. Likewise here, just because the Act does not specifically provide for an award of prejudgment interest (and indeed, it may preclude such an award), it does not follow that the general statute regarding prejudgment interest, Section 56–8–4, fills in that void. Thus, the majority is incorrect when it states that "the absence of an express allowance [of prejudgment interest] did not deprive the court of authority to make such an award."

We have said that the Association's liability is triggered by the insolvency of the insurer and that it is for all practical purposes deemed to be the insurer just as if the insurer were solvent. Section 59A–43–7(A)(2). But this is not the same as holding that the Association is the legal successor of the insolvent insurer and thus liable for its legal obligations as a guarantor. *See Sands*, 423 A.2d at 1229. Instead, the Association is liable to pay only "covered claims" subject to a statutory cap. Prejudgment interest in this case, therefore, may not be awarded in addition to the covered claims. This is not to say, however, that Section 59A–43–4(C) necessarily excludes prejudgment interest as an element of compensation comprising a portion of a "covered claim" when the total amount of compensation is less than the statutory cap.

The majority sees no reason to distinguish between pre- and postjudgment interest, but other courts have done so, and we find the distinction significant. Postjudgment interest cannot be considered part of covered claim because it is not compensation comprising part of an unpaid claim against an insolvent insurer. *See FIGA v. R.V.M.P. Corp.*, 874 F.2d 1528, 1533 (11th Cir.1989). Because the Act allows the Association to sue and be sued, it is subject to the laws of this State just like any other litigant. *See* § 59A–43–7(B)(3); *Sands*, 423 A.2d at 1229. Postjudgment interest under the majority's analysis, therefore, could be awarded in addition to a judgment (covered claim) against the Association even if the amount of interest exceeded the statutory cap. *See Sifers v. General Marine Catering Co.*, 892 F.2d 386, 398 (5th Cir.), *modified on other grounds*, 897 F.2d 1288 (5th Cir.1990). Prejudgment interest, on the other hand, is compensation which forms part of the judgment amount.

The majority notes that an award of prejudgment interest furthers the general purposes of compensating a plaintiff for the loss of the use of its money and of fostering settlement and preventing delays. These are worthy purposes, but are com-

pletely irrelevant here in the face of the limit upon the compensation that the Association is authorized to award.

Nor does the limitation on recovery defeat the stated purpose of the Act to avoid financial losses to claimants as a result of the insurer's insolvency. The statutory remedy was not intended to make the claimant whole, but only to mitigate the loss caused by the insolvency of the insurer. *See International Collection Serv.,* 555 A.2d at 980.

The Legislature has provided a remedy where there was none at common law, and if it meant to do more, it would have so specified. Here, the Act limits compensation in the form of a covered claim to $100,000. An award of prejudgment interest, which is another form of compensation to be distinguished from postjudgment interest, was improper in this case because it exceeded the statutory cap on compensation. The District Court was incorrect, therefore, in awarding prejudgment interest and costs.

BACA, J., concurs.

RANSOM, C.J., and MONTGOMERY and FRANCHINI, JJ., specially concur.

MONTGOMERY, Justice (specially concurring).

I (and the undersigned concurring Justices) concur with the foregoing opinion by Justice Frost, except that we disagree with his and Justice Baca's conclusion that the trial court erred in awarding prejudgment interest and costs. A majority of the Court has concluded that prejudgment interest and costs were properly awarded to each of the claimants. This opinion therefore announces the ruling of the Court on this issue and explains our reasoning.

■ We do not agree with the Association that the trial court's award of prejudgment interest was inconsistent with the Act's limitation on the Association's liability. The Association argues that the $100,000 limit on "covered claims" in Section 59A–43–4(C) precludes awarding prejudgment interest to the claimants since the amount of the court's judgment to each

claimant, not including prejudgment interest, was already equal to $100,000. In other words, the Association argues that the statutory cap of $100,000 on a covered claim includes prejudgment interest, so that a total judgment against the Association on a claim, including prejudgment interest (and costs), cannot exceed $100,000.

To support its position, the Association contends that the Act's cap on covered claims limits the Association's liability on all compensatory damages. It then argues that prejudgment interest is an element of compensation and is therefore included within the statutory cap.

We do not dispute the Association's characterization of prejudgment interest as an element of compensation. *See Ranch World, Inc. v. Berry Land & Cattle Co.,* 110 N.M. 402, 404, 796 P.2d 1098, 1100 (1990) (award of prejudgment interest is compensation for loss of use of funds). However, the issue before us is not whether prejudgment interest constitutes compensation for loss of the use of funds; rather, the issue is whether prejudgment interest is included within the definition of "covered claims" so as to be limited or excluded by the Act's liability cap of $100,000 per occurrence on individual "covered claims." We hold that it is not.

Section 59A–43–4(C) defines "covered claims" in pertinent part as follows:

an *unpaid claim* of an insured or of a liability claimant ... that arises out of and within the coverage and not in excess of the applicable limits of an insurance policy ... issued by an insurer authorized to transact insurance in this state, if such insurer becomes an insolvent insurer....

(Emphasis added.)

■ We believe that an "unpaid claim" refers to an amount that a claimant seeks to recover from an insolvent insurer and subsequently against the Association; it does not include prejudgment interest, which is an amount that is awarded later, after litigation has begun and been completed, to a successful claimant. The words of the section themselves (quoted in

Justice Frost's opinion) support this interpretation by expressly excluding supplementary payment obligations, including interest and court costs, from the definition of covered claims. The statutory cap on covered claims, therefore, while limiting the Association's liability on an *unpaid claim*, does not limit the total amount that a successful claimant may recover in a judgment against the Association.

"Court costs" is one of the types of "supplementary payment obligations" referred to in the statute. "Interest" is another.[1] A third is "attorneys' fees and expenses." This third type of supplementary payment obligation might arise, for example, if the Association unreasonably refused payment of an insured's claim against an insolvent insurer under a policy providing first-party coverage and the court awarded reasonable attorney's fees under NMSA 1978, Section 39-2-1 (Repl.Pamp.1991). The notion that an insured or a liability claimant seeking payment of a claim against an insolvent insurer may not recover these types of supplementary payment obligations in a successful action against the Association—whether the claim is less or greater than $100,-000—strikes us as simply untenable.

■ The Association submits, as an alternative argument, that if prejudgment interest is not included within a "covered claim" and therefore is not subject to the statutory cap, the trial court nonetheless erred in awarding it because the Act does not authorize such an award. We disagree because we do not believe that specific authority within the Act itself is necessary to award prejudgment interest. While we would certainly abide by an express prohibition in the Act against an award of prejudgment interest, the absence of an express allowance did not deprive the court of authority to make such an award. On the contrary, the trial court had that authority under either NMSA 1978, Section 56-8-3 or Section 56-8-4(B) (Repl.Pamp.1986).[2] *See United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 103 N.M. 480, 488, 709 P.2d 649, 657 (1985) (prejudgment interest under § 56-8-3(A) awarded for breach of contract); *Southard v. Fox*, 113 N.M. 774, 776-78, 833 P.2d 251, 253-55 (Ct.App.1992) (prejudgment interest awarded under § 56-8-4(B) in action based on tort).

■ Our holding furthers the general purposes of awarding prejudgment interest. One such purpose is to compensate a plaintiff for the loss of the use of money, resulting from the defendant's failure to pay, during the pendency of a lawsuit. *Ranch World*, 110 N.M. at 404, 796 P.2d at 1100. We perceive no reason why we should not advance this purpose in the

---

1. The statute does not distinguish between pre- and post-judgment interest. Since both forms of interest accrue after the insured's claim against the insolvent insurer has ripened into a "covered claim" and the Association has been adjudicated liable therefor, we see no reason to draw any such distinction ourselves.

2. The trial court did not specify whether it was awarding prejudgment interest under § 56-8-3 or § 56-8-4(B). Section 56-8-3 (which, as demonstrated by, *e.g.*, *United Nuclear*, has been interpreted to authorize prejudgment interest in an appropriate case) provides in part:

> The rate of interest, in the absence of a written contract fixing a different rate, shall be not more than fifteen percent annually in the following cases:
> A. on money due by contract....

Section 56-8-4(B) provides:

> The court in its discretion may allow interest of up to ten percent from the date the complaint is served upon the defendant after considering among other things:

> (1) if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and
> (2) if the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.

The fact that the court allowed prejudgment interest at the rate of 15% suggests that the court was relying on § 56-8-3, which probably was proper since the money due to the claimants from the Association was "due by contract." On the other hand, the fact that the court granted prejudgment interest from the date the complaint was filed, instead of an earlier date, such as the date the Association or the Conservator was notified of the claims, suggests that the court may have had § 56-8-4(B) in mind. In any event, because no issue is raised on this appeal as to the applicable statute, the appropriate rate, or the proper date from which the prejudgment interest started to run, we do not rule on any of these potential issues.

present context. On the contrary, it would be inequitable to deny successful claimants under the Act the cost of the lost opportunity to use the money of which the Association had use during the lawsuit. *Cf. Ulibarri v. Gee*, 107 N.M. 768, 769, 764 P.2d 1326, 1327 (1988) (when award is remanded for a new decision because of excessiveness, new award accrues interest from the date of the original judgment).

Our holding also furthers the purposes of fostering settlement and preventing delay. *See Southard*, 113 N.M. at 778, 833 P.2d at 255 (purpose of § 56–8–4(B) is to foster settlement and prevent delay). By allowing an award of prejudgment interest to a successful claimant in an action against the Association, we encourage the parties to settle their disputes promptly.

■ This Court has previously held that an injured party is generally entitled to prejudgment interest *as a matter of right* when the amount due by contract is fixed or liquidated. *E.g., United Nuclear*, 103 N.M. at 488, 709 P.2d at 657; *Shaeffer v. Kelton*, 95 N.M. 182, 187–88, 619 P.2d 1226, 1231–32 (1980). When the amount is not fixed or readily ascertainable, the trial court has discretion to award prejudgment interest. *United Nuclear*, 103 N.M. at 488, 709 P.2d at 657; *Shaeffer*, 95 N.M. at 187, 619 P.2d at 1231. In the present case, the award of prejudgment interest might very well be viewed as a matter of right since the amount due to each claimant was fixed and readily ascertainable. In any event, the Association has not demonstrated that the trial court abused its discretion in making the award.

On the issue of prejudgment interest and costs, then, as well as on the other issues discussed in Justice Frost's opinion for the Court, the trial court's judgment is affirmed in all respects.

**IT IS SO ORDERED.**

RANSOM, C.J., and FRANCHINI, J., concur.