583 So.2d 556 (1991)
Barbara F. GAUTHIER, Plaintiff-Appellee,
v.
CHAMPION INSURANCE COMPANY, Defendant-Appellant.
No. 90-176.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1991.
*557 Preston N. Aucoin, Ville Platte, for plaintiff-appellee.
Mathews, Atkinson, Guglielmo, Marks & Day, Glen S. Love, Carey J. Guglielmo, Baton Rouge, for defendant-appellant.
Before GUIDRY, YELVERTON and WILLIAM A. CULPEPPER[*], Judges.
WILLIAM A. CULPEPPER, Judge Pro Tem.
The sole issue presented by this appeal is whether Louisiana Insurance Guaranty Association is liable for statutory penalties and attorney's fees assessed against an insolvent insurer under La.R.S. 22:658. This issue has not been decided by the Louisiana Supreme Court. It has been decided by the Louisiana Fifth Circuit Court of Appeal.

FACTS
The facts are not in dispute. Plaintiff originally filed suit against Champion, her insurer, for collision coverage and statutory penalties and attorney's fees arising out of an automobile accident. Plaintiff moved for summary judgment, which was granted. The judgment, dated June 7, 1989, awarded plaintiff the sum of $3,722.59 for repairs to her automobile, the statutory penalty of ten percent on that sum as well as $744.52 as attorney's fees, all with legal interest.
Champion was declared insolvent on June 5, 1989. On June 8, 1989, the trial court allowed plaintiff to amend her petition and add LIGA as party defendant, due to Champion's insolvency. LIGA answered and claimed that, under Louisiana law, it is not responsible for statutory penalties and attorney's fees due to Champion's arbitrary and capricious behavior. Thereafter, plaintiff filed a rule to show cause why LIGA should not pay the judgment against Champion. After a hearing on the rule, the trial court rendered judgment in favor of plaintiff and against LIGA. LIGA appealed.

LAW
On appeal, LIGA contends it is a statutory body created by La.R.S. 22:1375, et seq., and therefore is liable for only those obligations provided by the Louisiana Insurance Guaranty Association Law. We agree.
La.R.S. 22:1382 A provides in pertinent part:
"A. The association shall:
(1)(a) Be obliged to the extent of the covered claims existing prior to the determination of the insurer's insolvency...
* * * * * *
(2) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent." (Emphasis supplied.)
La.R.S. 22:1379(3)(a) provides:
"(3)(a) "Covered claim" means an unpaid claim, including one for unearned premiums by or against the insured or agent, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Part applies issued by an insurer, if such insurer becomes an insolvent *558 insurer after September 1, 1970, and:"
Also relevant is La.R.S. 22:1382 A(1) which provides in pertinent part:
"A. The association shall:
(1)(a) Be obliged to the extent of the covered claims existing prior to the determination of the insurer's insolvency, or arising after such determination ... but such obligation shall include only that amount of each covered claim, except return premiums, which is in excess of one hundred dollars and is less than one hundred fifty thousand dollars, per claim, ..." (Emphasis supplied.)
Under the above statutory provisions it is clear that LIGA is liable only for "covered claims" as defined by the statute. La.R.S. 22:1379(3)(a) defines a covered claim as an "unpaid claim ... which arises out of and is within the coverage ... of an insurance policy to which this Part applies..." This language clearly contemplates only obligations arising from the contractual relationship between the parties to the policy.
Our Supreme Court recognized in Cantrelle Fence & Supply v. Allstate Ins., 515 So.2d 1074 (La.1987) that an obligation arising out of the penalty statute, La.R.S. 22:658, is separate and distinct from an obligation arising out of the policy coverage. The court states:
"From an analysis of the elements which must be proven, it becomes clear that the juridical facts which give rise to litigation in the present case create a different cause of action (a different obligation) from that previously raised in the case against Allstate under the uninsured motorist coverage of the insurance policy. The present suit involves an obligation arising out of the penalty statute, R.S. 22:658, which is separate and distinct from the obligation arising out of the contractual relationship under the insurance policy." Id at 1079.
Plaintiff argues that LIGA "stands in the shoes of Champion," citing Sifers v. General Marine Catering Co., 897 F.2d 1288 (5th Cir. 1990), in which one issue was whether LIGA could reduce its maximum statutory liability of $149,900.00 by the amount of the deductible in the policy. The court held LIGA was not entitled to this offset, stating:
"We agree with the district court that LIGA steps into the shoes of the defunct insurer and can avail itself of the offsets that would have been enjoyed by Midland, if solvent. However, we depart with its conclusion that, as a consequence of this proposition, LIGA is entitled per se to apply the policy's deductible to reduce the association's statutory liability limit. Nothing in the IGAL or the caselaw supports such a rule.
Properly construed, the $50,000 deductible operates to make Houtech a self-insurer for WC/EL claims up to a value of $50,000 and does not operate, as the district court implies, to define the WC/EL policy's limitation on coverage. Assuming that Midland had remained solvent, the insurer would be at risk in this case for $195,000, representing the $245,000 judgment adjusted by the amount of the deductible.
It does not follow that LIGA is entitled to reduce its statutory maximum liability merely because $50,000 out of $245,000 is contractually borne by Houtech, the insured, as a cost for the partial self-insurance it bargained for in the policy. Stepping into the shoes of Midland, as the IGAL instructs, but after giving Midland the benefit of the deductible, the insolvent insurer remains obligated to Smith in excess of $149,900. Thus, the deductible is irrelevant in the instant case because it does not, when applied to the judgment, reduce the defunct insurer's liability below LIGA's statutory maximum.
Cases may arise in which the deductible operates to reduce LIGA's liability below the statutory $149,900 maximum. For example, if Smith had secured a $145,000 judgment (instead of $245,000) against Houtech, the deductible would reduce Transit's liability for the claim to $95,000. Stepping into Transit's shoes at this moment, and after the deductible is accounted for, LIGA would be liable, at most, for $95,000. This approach is not *559 the same as reducing the statutory maximum by the $50,000 Midland deductible ($99,900), the approach followed by the district court."
As can be seen from the above quote from Sifers, the term "stepped into the shoes" is used broadly in that opinion. The case is decided narrowly under its particular facts. The court recognizes that cases may arise in which LIGA can claim policy deductibles. We conclude Sifers is not even persuasive that LIGA is liable for penalties and attorney's fees, an obligation outside the policy and not provided by the Louisiana Insurance Guaranty Association Law.
We hold that LIGA is not liable in the present case for penalties and attorney's fees.
In Breaux v. Klein, 572 So.2d 656 (La. App. 5 Cir.1990), writ den., 573 So.2d 1140 (La.1991), which was not mentioned by either party, our brethren of the Fifth Circuit reached the same conclusion in an opinion which gives as additional reasons:
"We fear that to expose LIGA to the possible thousands of claims for arbitrary and capricious non-payment by insolvent insurers, particularly in the wake of Champion's demise, could potentially threaten the very existence of the insurance guaranty fund which has as its avowed statutory purpose the avoidance of excessive delay in payment and the avoidance of financial loss to claimants or policyholders. We note further that under the 1990 amendment to R.S. 22:1379 statutory penalties and attorney fees are specifically excluded from a covered claim."
Courts in other states have reached the same conclusion. For instance, in Vaughn v. Vaughn, 23 Wash.App. 527, 597 P.2d 932, review den., 92 Wash.2d 1023 (1979), the court held:
"We will first address plaintiff's argument that a claim for `bad faith' damages is within the scope of the Insurance Guaranty Association Act. Plaintiff urges that the Association, by statute, is required to `step into the shoes' of the insolvent insurance carrier and to assume responsibility for all debts owed to the company's insured or to claimants under the insured's policy. This statement is too broad. Under the Act, the Association is liable for only `covered claims.' A covered claim is an `unpaid claim, ... which arises out of and is within the coverage of an insurance policy to which [the Act] applies.' RCW 48.32.030(4). As the courts of this state have uniformly held that an action by an insured against his carrier for bad faith in handling a claim or suit sounds in tort rather than contract, (Citations omitted), we must conclude that a claim for such damages is not a `covered claim' within the meaning of RCW 48.32.030(4). (Emphasis added.)" Id. 597 P.2d at 934.
See also Rivera v. Southern Am. Fire Ins. Co., 361 So.2d 193 (Fla.App.1978), cert. den., 368 So.2d 1372 (Fla.1979), and Interstate Fire and Cas. v. Cal. Ins. Guarantee, 125 Cal.App.3d 904, 178 Cal.Rptr. 673 (2 Dist. 1981).
For the foregoing reasons, we reverse the judgment of the trial court as to penalties and attorney's fees and affirm it as to the damages award. Costs of this appeal are assessed to plaintiff-appellee, Barbara F. Gauthier.
REVERSED IN PART AND AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision as Judge Pro Tempore.