1 iSAUNDERS, Judge.
Raymond Chambley, d/b/a Central Louisiana Land, Timber and Investment (Central Louisiana Land), concededly cut 3.22 acres of plaintiffs’ timberland in this timber trespass case.
The jury awarded plaintiffs $1,000.00 in actual monetary damages for the trees cut and determined that the defendant acted in good faith and did not cross marked boundary lines he knew or should have known to exist. In addition, the jury awarded special damages of $3,200.00 for the cleanup of the property and $300.00 for reforestation.
|2The trial court rendered judgment in accordance with the jury’s findings and additionally denied plaintiffs’ claim for penalties and attorney’s fees, which hinged on a finding of bad faith on defendant’s part,[1] and taxed the Louisiana Insurance Guaranty Association (LIGA), named party defendant in place of defendant’s insolvent carrier, for post-insolvency interest and cost.
Both plaintiffs and LIGA appeal. Plaintiffs contend that the jury was manifestly erroneous in accepting lower estimates of their damages than the value suggested by their expert and in concluding that defendant’s trespass was not in bad faith. Finally, plaintiffs contend that, even assuming defendant’s initial trespass was not in bad faith, the trial court erred in not awarding them attorney’s fees under LSA-R.S. 3:4278.1 due to Central Louisiana Land, Timber and Investment’s failure to pay even the undisputed portions owed within thirty (30) days after learning of its timber trespass.
In addition to opposing plaintiffs’ appeal, LIGA represents that Act 651 of 1993 exempts it from being condemned to pay court cost. Additionally, it maintains that the expert witness fees set by the trial court are excessive, particularly those attributable to plaintiffs’ star expert.
We vacate that portion of the judgment denying plaintiffs attorney’s fees under LSA-R.S. 3:4278.1 as to Central Louisiana Land for which we award $8,000.00 for efforts spent at the trial level, but find LIGA immune to them. Otherwise, we affirm the judgment of the trial court.

*706
STIPULATED FACTS

Following opening statements, the jury was advised of several joint stipulations. These included an admission that an employee or contractor working under the ^supervision of Central Louisiana Land crossed over the boundary line and cut timber on the Dupin’s property and that 3.22 acres of Dupin property were affected. In addition, Central Louisiana Land stipulated that its contractor cut timber on a tract of land immediately north of and adjacent to the Dupin tract. Finally, the parties stipulated that reforestation of the acreage would cost $299.30.
For purposes of clarity, the other material facts will be set forth in the context of the legal issues raised by the parties’ briefs.

Value of Cut Timber:

First, plaintiffs maintain that the jury’s fixing $1,000.00 as the actual monetary value of the trees cut was manifestly erroneous. Plaintiffs’ witness, Mr. Charest Thibo-deaux, accepted as an expert in real estate appraisal and forestry consulting, concluded that the fallen timber was worth $2,693.50. He derived this figure from estimating the volume of wood stands cut or damaged and multiplying this figure against average prices compiled by the Louisiana State University Cooperative Extension Service for Area 3, the region of the state in which the Dupin tract is situated.
A lower estimate was made by Tom Dixon, defendant’s expert in the field of forestry and timber appraisal. Like Mr. Thibodeaux, Mr. Dixon surveyed the property, measured the diameter at breast height of each fallen tree, and estimated its board feet by utilizing the standard Doyle chart. Unlike Thibodeaux’s use of standardized regional prices, however, Dixon’s prices were obtained in the vicinity of the Dupin tract.
We see no error that warrants reversal. Where two permissible views of the evidence exist, the fact-finder’s choice between them cannot be manifestly erroneous or clearly wrong. Canter v. Koehring Co., 283 So.2d 716 (La.1973).

14Good Faith/Bad Faith of the Trespassers:

After trial, the jury returned a verdict finding defendant in good faith in its cutting of plaintiffs’ trees and that it had no reason to know, even by reasonable inspection, that it had crossed marked boundary or ownership lines. Plaintiffs claim manifest error in these conclusions.
Our review of the record, including photographs contained therein, leads us to conclude that the jury was not clearly wrong in its conclusions.
Among the evidence favoring a finding of bad faith were the meandering nature of the trespass, less than obvious corner markers, and the defendant’s alleged refusal of plaintiffs’ offer to have an individual familiar with the property show its boundaries prior to defendant’s commencement of lumber operations in the area.
Favoring the jury’s conclusion was testimony by defendant’s witnesses to the effect that the boundary lines were not clearly marked. Additionally, photographs introduced as exhibits indicate that defendant did not remove red ribbons attached to a fence bordering plaintiffs’ property. The presence of these markers could reasonably have been construed by the jury as an indication that Central Louisiana Land lacked bad faith and was simply negligent.
The theory of plaintiffs’ case is basically that defendant contacted them for permission to cross onto plaintiffs’ property since they were cutting adjoining lands, and defendant trespassed after their overtures were rejected. Defendant denied each of these contentions and presented testimonial and other evidence in support of its position. We are unable to say the jury was clearly wrong in its factual findings. The jury was in a better position to evaluate live witnesses than we are, with our access limited to a cold record. Stobart v. State Through DOTD, 617 So.2d 880, 883 (La.1993); Canter, supra.
| Special Damages:
In their fourth assigned error, plaintiffs maintain that the jury did not award sufficient damages for cleanup and reforestation, and clearly erred in awarding no damages for loss of the property’s future value.
*707 Again, we are unable to say that the jury’s quantum findings were clearly wrong.
As to the cost of cleaning up the property, plaintiffs’ friend and expert, A.D. Ballard, testified that it would cost $19,500.00 to clean up the 3.22 acres. Defendant’s experts, on the other hand, estimated the job at $2,500.00 and $3,000.00, respectively. The jury awarded $3,200.00.
From the record we discern no clear error on the part of the jury. Plaintiffs’ expert’s estimate included mobilization of $250,000.00 worth of equipment to and from Moss Bluff, $100.00 per hour for use of his excavator and $75.00 per hour for use of his bulldozer, fifty (50) to sixty (60) dump truck loads to move dirt and debris at $75.00 each, and $100.00 per hour for the stump grinder he would have to purchase for the job.
The expert made no actual site inspection and based his opinions on photographs of the scene he was given by plaintiffs.
Defendant’s first expert, Jerry Eaves of Oakdale, with 14 years experience in land clearing, dozer and baekhoe work, indicated that he could remove the stumps, clear the holes and refill them, and remove all sled marks for $3,000.00. If the removed stumps could not be placed on adjacent property, hauling them off would cost an additional $1,000.00.
Defendant’s second expert, Lloyd Lambert of DeRidder, with 20 years of similar experience, offered a bid of $2,500.00 to remove the stumps, fill the holes and place the stumps on the adjacent property, in addition to filling the ruts. If the adjacent property was not available, he would place the stumps in small piles and burn them, 16then haul off the residue for an additional $200.00. His expertise was acknowledged by both plaintiffs’ counsel and plaintiffs’ expert.
We cannot say the jury erred, as its award was actually higher than the lowest bid received to complete the task.
As to the alleged loss of value of plaintiffs’ property, the jury awarded no relief. As defendant point out in brief, plaintiffs’ case was premised on their alleged intentions to use the acreage for a retirement home, but at trial, Mr. Dupin conceded that he and his wife had actually selected no site for their dream home, had contacted no one concerning its construction, and had made no provisions for a driveway or utilities. Moreover, Mr. Dupin conceded that he and his wife only sporadically visited the site. Finally, Mr. Dupin acknowledged that more than six (6) acres of his woodland had remained unaffected and potentially available for a homesite, and that in any event, trees would have to be removed before any home could be built.
We are unable to say the jury clearly erred when, after hearing all the evidence and observing the demeanor of each of the witnesses, it concluded that plaintiffs did not establish their case.

Attorney’s Fees:

According to plaintiffs, the insured became liable for attorney’s fees April 26, 1994, and the insurer April 30, 1994. In support of their position, plaintiffs introduced several items of evidence, including a copy of the March 22, 1990, correspondence written by their original counsel and the certified mail receipt indicating the letter’s receipt by Mr. Chambley on March 26, 1990.[2] Second, a demand letter dated April 17, 1990, was sent to their insurer’s representative, Morris Temple and Company, in DeRidder, indicating suit would be filed within ten days if no ^response was forthcoming. A copy of the Dupins’ initial demand letter was incorporated by reference in the April 17 letter. Plaintiffs maintain that these two items justify imposition of attorney’s fees against Central Louisiana Land and the defunct carrier.
Plaintiffs suggest that these attorney’s fees are imputable to LIGA. The record discloses that counsel for plaintiff advised LIGA of his representation of the Dupins by corre *708 spondence dated May 30, 1990.[3] The demand letter cited LSA-R.S. 3:4278.1 and itemized the basis of plaintiffs’ claims to $61,-795.13 in damages.[4]
LIGA disputes plaintiffs’ contention that it can be required to pay attorney’s fees under LSA-R.S. 3:4278.1 or LSA-R.S. 22:1379(3)(d), which we address separately.

LSA-R.S. 3:4278.1:

LSA-R.S. 3:4278.1, as it read for purposes of this dispute, states:
Trees, cutting without consent; penalty
A. It shall be unlawful for any person to cut, fell, destroy or remove any trees, or to authorize or direct his agent or employee to cut, fell, destroy or remove any trees, growing or lying on the land of another, without the consent of the owner or legal possessor.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be Hable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed or removed, plus reasonable attorney’s fees.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed or removed....
D. If a good faith violator of Subsection A fails to make payment under the requirements of this Section within thirty days after notification and demand by the owner or legal possessor, the violator shall also be responsible for the reasonable attorney fees of the owner or legal possessor.
| gThus far we have addressed those portions of the judgment governed by LSA-R.S. 3:4278.1(B) and (C). We now consider the meaning and appHcabiHty of LSA-R.S. 3:4278.1(D). Plaintiffs maintain that, pursuant to its provisions, even if Central Louisiana Land was not in bad faith when it initially trespassed, it and its insurer by legal proxy became Hable for reasonable attorney’s fees by virtué of its failure to make payment within thirty (30) days after notification and demand by the Dupins.
LIGA maintains that the provision is too vague to be enforced, as LSA-R.S. 3:4278.1(D) governs the “good faith violator of Subsection A [who] fails to make payment under the requirements of this Section within thirty (30) days” and there is no provision in the statute for a measure of payment for anything other than treble damages. (Emphasis added.) Since Subsection D is penal in nature, LIGA urges us to ignore the provision in its entirety.
In construing the meaning of statutes, “courts must endeavor to give an interpretation that will give them effectiveness and purpose, rather than one which makes them meaningless.” State v. Union Tank Car Co., 439 So.2d 377, 382 (La.1983); Smith v. Cajun Insulation, Inc., 392 So.2d 398, 400 (La.1980). We cannot accept LIGA’s interpretation of the statute, as it would render meaningless the provisions of LSA-R.S. 3:4278.1(D). The provision, although no model of clarity, clearly awards reasonable attorney’s fees when a party, in good faith, cuts or destroys trees growing or lying on the land of another without consent and fails to make the owner whole even for the damages that are unquestionably imputable to the trespasser. Considering the act as a whole, see Green v. Louisiana Underwriters Ins. Co., 571 So.2d 610, 613 (La.1990), LSA-R.S. 3:4278.1 clearly seeks to assess treble damages and attorney’s fees against those who trespass in bad faith, absolving those | gwho transgress in good faith from attorney’s fees provided reparations are made within thirty days of notice. (Treble damages are available in either case). LSA-R.S. 3:4278.1(D) governs those whose initial good faith in trespassing is subsequently tarnished *709 by failure to make reparations -within thirty (30) days of notice.
Because no compensation was tendered within thirty (30) days of notice, we hold that the trial court erred in refusing to award attorney’s fees. The question thus becomes against whom among a trespasser, its defunct insurer, and LIGA such fees may be awarded under the present circumstances. We believe that, as to LIGA, this question is clearly answered by LSA-R.S. 22:1379(3).

LSA-R.S. 22:1379(3):

Plaintiffs seek attorney’s fees from Central Louisiana Land and the Louisiana Insurance Guaranty Association. Also named party is Laramie Insurance Company in Liquidation, Central Louisiana’s defunct insurance carrier which, according to plaintiffs’ petition, was declared insolvent February 14, 1990.
LIGA maintains that the law prohibits imposition against it of attorney’s fees. Relying on Bowens v. GMC, 608 So.2d 999 (La.1992), Gauthier v. Champion, 583 So.2d 556 (La.App. 3d Cir.1991) and Breaux v. Klein, 572 So.2d 656 (La.App. 5th Cir.1990), writ denied, 573 So.2d 1140 (La.1991), for the proposition that LIGA may only be held liable for “covered claims,” which by law are contractual, it strenuously argues that the laws do not obligate it to pay attorney’s fees because they are not provided for in the Laramie insurance contract.
We are compelled to agree. LIGA is not answerable for attorney’s fees by virtue of LSA-R.S. 3:4278.1, due to statutory provisions defining LIGA’s exposure. LSA-R.S. 22:1379(3). LIGA, standing in the shoes of an insolvent insurer, cannot even be cast for penalties when other statutory provisions explicitly award them against not Imonly the insured but “his insurer.” See Bowens, supra, at 1004-1005. Claims payable to claimants by LIGA include only those arising contractually, not by penal statutes applicable to insurers. Gauthier, supra. However, insofar as nothing in the law insulates the insured from assessment of attorney’s fees, a different result is warranted with regard to Central Louisiana Land. After reviewing the record, we find that the thorough efforts by plaintiffs’ counsel at the trial level, necessarily time consuming, justify an award of $8,000.00 in attorney’s fees.[5]

LIGA and Court Costs:

The remaining issue concerns court costs assessed to the Louisiana Insurance Guaranty Association.
In addition to finding defendant’s liable for $4,500.00, the August 31, 1993, judgment taxed legal interest and court costs to defendants, limiting the interest and costs assessed against LIGA to those incurred post-insolvency. On January 28, 1994, the judgment was amended to fix expert witness fees for those who testified at trial. The trial judge set $1,900.00 as the appropriate expert witness fee for plaintiffs’ expert, Charest Thibodeaux. LIGA contends that Act 651 of 1993, amending and re-enacting LSA-R.S. 13:4521(A), relieves it of the obligation to pay any court costs. Alternatively, LIGA submits that the expert witness fee fixed for Mr. Thibodeaux is clearly excessive; it contends that the bulk of the expert’s time was spent in preparation for litigation. Finally, citing Castille v. McDaniel, 620 So.2d 461 (La.App. 3d Cir.1993) and LSA-R.S. 22:1379(3)(d), LIGA maintains that it should not be held liable for the costs of Mr. Thibodeaux’s work conducted prior to February 14, 1990, the date of Laramie’s insolvency.
| nPlaintiffs respond that the costs assessed against LIGA include no pre-insolvency costs. As to Mr. Thibodeaux’s fees, plaintiffs refer us to the trial judge’s enunciated criteria for establishing expert witness fees:
“[T]he expert witness fees are set not only on what I perceive to be the expert character of the witness in the sense. I’m giving some consideration to his education and training in doing this, but the primary consideration is how long they were on the witness stand, how long — how much time they had to give up. Mr. Thibodeaux having .been on the witness stand the longest *710 time, an hour and twenty minutes, is being awarded the most money.”
[[Image here]]
We find no merit to LIGA’s assertions. On appeal, we will not alter such expert fees unless the record on appeal reveals a serious abuse of discretion. Antis v. Miller, 613 So.2d 1034, 1037 (La.App. 3d Cir.1993). We have reviewed the record. It reveals no abuse of discretion. Mr. Thibodeaux’s testimonial evidence represents the culmination of many hours of labor. His efforts were very helpful to the administration of justice, and would not have been but for his many years of experience in addition to the time spent on the stand.
Second, the trial court imposed against LIGA no pre-insolvency costs, for which the Association is not responsible. LSA-R.S. 22:1379(D). Castille, supra, is irrelevant.
LSA-R.S. 13:4521 states, in pertinent part, as follows:
State and its subdivisions, boards, and commissions not required to pay court costs; exceptions
liaA. Except as provided in R.S. 13:5112, R.S. 19:15 and 116, and R.S. 48:451.3, and as hereinafter provided, neither the state, nor any parish, municipality, nor other political subdivision, public board, or commission, nor any officer or employee of any such governmental entity when acting within the scope and authority of such employment or when discharging his official duties shall be required to pay court costs in any judicial proceeding instituted or prosecuted by or against the state, or any such parish, municipality, or other political subdivision, board, or commission, in any court of this state or any municipality of this state, including particularly but not exclusively those courts in the parish of Orleans and the city of New Orleans. This Section shall also apply to the Louisiana Insurance Guaranty Association and the Louisiana Life and Health Insurance Guaranty Association in any judicial proceeding instituted by or against them. This Section shall also apply to employees or agents of the state if they are named as defendants in a suit arising out of the course and scope of their employment or agency. Costs which are temporarily deferred pursuant to this Section cannot be shifted to opposing parties during the pendency of such deferment.
B. It shall be the duty of the exempted entities set forth above to assist in the collection of court costs due by the opposing litigants by requesting the court in question to tax costs in accordance with the provisions of Article 1920 of the Code of Civil Procedure. In this regard the entities are authorized to and shall withhold any court costs due by the opposing litigants, from any settlement payment to the said parties, and shall forward said costs to the clerk of court.
* * * * * *
With regard to post-insolvency costs, the provision cited by LIGA, LSA-R.S. 13:4521(A), in and of itself does not immunize the Association from post-insolvency costs. Unlike LSA-R.S. 23:1379(D), which explicitly proscribes the imposition of pre-insolvency costs against LIGA, LSA-R.S. 13:4521 specifically defers to LSA-R.S. 13:5112, merely serving to underscore the great discretion vested in the courts as to post-insolvency costs taxable to LIGA and public parties. LSA-R.S. 13:5112 provides:
Suits against the state or political subdivision; court costs; interest
A. In any suit against the state or any department, board, commission, agency, or political subdivision thereof, the trial or appellate court, after taking into account any equitable considerations as it would under Article 1920 or Article 2164 of the Code of Civil Procedure, as applicable, may grant in favor of the successful party and against the state, department, board, commission, agency, or political subdivision against which judgment is rendered, an award of such successful party’s |i3court costs under R.S. 13:4533 and other applicable law as the court deems proper but, if awarded, shall express such costs in a dol *711 lar amount in a judgment of the trial court or decree of the appellate court.
******
(Emphasis added.) "
Under the circumstances, we find no error in taxing the costs to the losing party. Plaintiffs’ claim was clearly meritorious; and, after bearing the brunt of lost pre-insolvency costs and attorney’s fees to which they would otherwise clearly be entitled, it would be too great and inequitable an imposition to require that they additionally bear the costs of this proceeding.
Accordingly, we affirm LIGA’s taxation of all post-insolvency costs, and order same for those associated with these appeals. LSA-R.S. 13:4521 requires that a dollar amount be established as to costs for which LIGA may be required to pay. By amended judgment, the trial court enumerated the fees for experts, thus complying with a portion of the requirement. However, our review of the record does not reveal what other post-insolvency court costs incurred by plaintiff, if any, are to be borne by LIGA in addition to those enumerated by the trial court. Therefore, we will remand to the trial court for the limited purpose of fixing such costs.

DECREE

We reverse that portion of the judgment rejecting plaintiffs’ claim for attorney’s fees as to Raymond Chambley d/b/a Central Louisiana Land, Timber and Investment, for which we award $8,000.00, but otherwise affirm the judgment of the trial court.
AFFIRMED AS AMENDED AND REMANDED FOR SPECIFICATION OF COURT COSTS TAXABLE TO LIGA.

. As will be shown below, however, the court did observe that defendant failed to pay within thirty (30) days of notice as required by LSA-R.S. 3:4278.1.

. Enclosed with the March 22, 1990, correspondence was evidence of the Dupins’ ownership and Mr. Thibodeaux’s $19,500.00 appraisal for the property’s restoration. The correspondence further requested copies of any data in Mr. Chambley's possession concerning the sale of the timber and indicated that prompt resolution would “negate the cost of litigation as well as attorney's fees.”

. In brief, plaintiffs indicate the correspondence was dated March 30, 1990, but the correspondence contained in the record which fits the description is dated May 30, 1990, whose date is confirmed by those certain attachments that similarly postdate March 30, 1990.

. It alleged $25,000.00 in general damages, $19,-500.00 in restoration expenses, $7,000.00 for the value of removed and damaged timber, and $6,000.00 in lost land value. The balance of the $61,795.13 total was for legal, appraisal and surveying fees.

. Plaintiffs are entitled to no attorney’s fees on appeal, since Central Louisiana Land did not appeal and their claims against LIGA are unsuccessful.